## HAYWARD v. MUNGER et al.

1. ASSIGNMENT OF NOTE. When the date of the assignment of a note does not appear, it is presumed that it was assigned on the day it was executed.

2. SAME: ASSIGNEE AFTER MATURITY. The assignee of a note after maturity takes the same, subject to all equities existing against it in the hands of the assignor.

3. INTEREST ON USURIOUS CONTRACT. The Supreme Court has never held that the borrower in a usurious contract must tender to the lender, in addition

to the principal remaining due, interest thereon computed at the rate of six per cent, before a court of equity will, on his application, enjoin a sale under a deed of trust executed to secure the performance of the usurious contract.

4. SUFFICIENCY OF TENDER. When a creditor, at the time a tender is made, makes no objections to the amount tendered, it will be held sufficient, if upon the trial it is found that it was not so large as the amount actually due. Whether he is precluded from recovering more when he does not object to the amount tendered, *quere.*

5. To WHOM MADE. A tender to a trustee who holds the notes of the debtor for collection, and is proceeding to sell the property of the debtor conveyed to him in trust to secure the payment of the debt, is a tender to the agent of the beneficiary and binds him.

6. KEEPING TENDER GOOD. At law a tender is not sufficient if the money is not brought into court; but the same rule will not be enforced in equitable actions. The party making it may, if he sees fit, retain it, but must produce it upon reasonable notice of its acceptance.

*Appeal from Scott District Court.*

THURSDAY, APRIL 9.

HAYWARD borrowed of Vail one thousand dollars, and executed a trust deed to Powers upon a certain tract of land to secure said loan. Powers died, and Munger, by the order of the County Court, was substituted as trustee. The said trustee was about to sell the land when Hayward brought this bill, upon the ground that he had paid and tendered all that was owing upon said debt. Decree for complainant, and respondent appeals.

*Charles E. Putnam* and *John N. Rogers* for the appellant.

I. The tender was not made to the right person, the holder of the note or his attorney. Dunlap's Paley's Agency, 274.

II. The tender was ineffectual to deprive the appellant of interest and costs. The money tendered must be paid into court. *Mohn* v. *Stoner*, 11 Iowa, 30; *Freeman* v. *Flem-*

*ing*, 5 Id., 460; *Johnson* v. *Triggs*, 4 G. Greene, 97; *String-ham* v. *Brown*, 7 Iowa, 33; *Sloan* v. *Coolbaugh*, 10 Id., 31; *Clemens* v. *Elder*, 9 Id., 272.

III. If the tender was made to an agent, he was not authorized to receive a note; he could take nothing but money. Story Agency, § 98; *McCollough* v. *McKee*, 4 Harris, 287; *Corning* v. *Strong*, 1 Cart. (Ind.), 329; *Kirk* v. *Hiatt*, 2 Id., 322; *Miller* v. *Edmondstone*, 8 Blackf., 291; *McCarver* v. *Nealey*, 1 G. Greene, 360.

*George E. Hubbell* for the appellee, reviewed the evidence and the authorities cited by the appellant.

WRIGHT, J.—Complainant negotiated the loan with Tallman, Powers & McLean, who, it seems, were acting as the agents of Vail; and Powers, of said firm, was the trustee named in the deed. The money was borrowed April 1, 1857, for one year, complainant agreeing to pay interest at the rate of from twenty-three to twenty-five per centum. He paid $240 April 1, 1858, and $100 in June, 1859. As to these payments there is no controversy. It is also conceded that before the commencement of this action he offered in writing to pay $315; said offer being made to Munger, the trustee. Complainant also claims that he paid in June, 1859, $480; and this is denied. The questions arising relate to the tender and the alleged payment of $480.

I. And first, as to the payment. As already suggested, Powers, of the firm of Tallman, Powers & McLean, was the trustee. The whole business was transacted with him. The note was made payable to Vail, and assigned by him, without date, to said firm. The assignment being without date, and the true date not being shown, the presumption is that it was made on the day the note was executed. On the back of the note there is an assignment of the same by Tallman, Powers & McLean to one Bowdish, of date May 1,

1859. On the 20th of June, 1859, complainant made his note to said firm for $480, with two sureties, payable November 1st, next after its date, and further secured the same by chattel mortgage. He afterwards paid on this note at least the sum of $386, when the note was transferred to one Haight, without recourse; and in this manner complainant alleges he paid $480 on his loan.

And the point here made by Bowdish, the appellant, is that he, prior to the execution of the $480 note, had become the. owner of the original debt, and that Powers, in taking the latter note, acted without authority. It is conceded that if the note given to Vail was transferred to Bowdish after June 20, 1859, then this $480 should properly be applied upon it. And the reasoning is, that if the note then belonged to Vail, such payment, whether good as against him, would certainly be so as to Powers, and as the present holder derives title not from Vail, but Powers, he takes it subject to every equity existing when it was transferred, which would affect it in the hands of Powers. And under the testimony, it seems to us that this concession is fatal to this part of appellant's case. The referee was perfectly justified in finding the note had not been transferred to Bowdish at the time the $480 note was given. True, the assignment purports to have been made May 1, and the note is dated June 20, 1859. There are several facts, however, which show beyond any fair doubt that the assignment was not then made. In the first place, complainant and another witness, who had the note in their possession at the time of executing that for $480, swear positively that there was no such indorsement upon it, and this was at least six weeks after the first of May. Then, again, it seems that Powers, treating the $100 and $480 as paid in fact for the usurious interest reserved, made a credit on the original note of all interest, and $130 on the principal, and this is dated May 1, 1859. And yet it is most

conclusively shown that the payment from which he felt authorized to make said credits, were not made until June 20, 1859. Below this upon the note is the assignment to Bowdish, showing that it was after the entry of the credit, and, therefore, unless the credit was entered before the payment, which is not likely, the assignment was not prior to June 20, 1859.

Complainant seems to assume in his bill that Powers was acting at the time as the agent of some other person. But for this concession we should strongly incline to the opinion that the firm of Tallman, Powers & McLean then owned this note. It was certainly assigned to the firm, and, as we have seen, it did not in fact pass to Bowdish until sometime after. Not only so, but the $480 note was made payable to them, and this fact, while not clearly inconsistent with ownership in their principal, under the circumstances, sustains the hypothesis that the title was then in them.

The testimony shows that Powers agreed to credit that note, or treat it as a payment upon that secured by the trust deed. There may have been some agreement, or he may have intended to apply part of it upon the reserved usury. But however this may be, it is clear that it was designed to be then applied to the discharge of so much of the large note, either interest or principal, or both. And such being the case, and Powers, either as owner or as the agent of Vail, having the power to make such agreement, Bowdish took the note subject to such payment or equity, and therefore has no just ground for complaining that it was allowed by the referee.

II. In the second place, as to the tender. The referee found that the true amount due, when it was made, was $316.18 instead of $315. It was made to trustee Munger, on the 14th of May, 1860, after the property was advertised, and four days before the property was to be sold. The offer was in writing, and directed to the trustee and C. E.

Putnam, attorney for Vail. The service was upon Munger alone, who, "for himself and for said Vail, refused to accept the money tendered, without assigning any reason therefor." Munger was appointed trustee by the County Court, upon the petition of Bowdish, April 23, 1860, as appeared by an indorsement on the deed of trust; but whether complainant had notice of this, or knew at whose instance the appointment was made, does not appear.

The referee allowed interest at the rate of six per centum per annum on the amount of the original loan, and upon this basis found that the amount due was $316.18. Neither party seems to controvert this rule, and we therefore let it pass, without, by any means, conceding its correctness, remarking that we are not aware of any case decided by this court which recognizes the right to such interest.

The referee also found, that as the trustee made no objection at the time to the amount tendered, he was precluded from objecting afterward. It was, therefore, sufficient, though defective in amount, to stop interest and costs, but that respondent, if entitled to it under the proof, must recover a larger amount than the sum thus tendered. That this rule is correct, so far as it relates to interest and costs, we entertain no doubt, in view of the provisions of our statute, ch. 74. Whether the party is not precluded from recovering now, when he does not object to the amount tendered, is a question of some doubt, one that does not now arise, however, as the difference is so small that appellee passes it without controversy.

But appellants insist that the tender was made to the wrong person; that it was not brought into court, nor offered to be by the bill, and that, therefore, the decree below is erroneous. The referee ordered that the money should be brought into court by a day named, and in default thereof the bill should be dismissed. It was brought in according to the order, and the final decree made, giving

Hayward v. Munger.

to respondents the amount of the tender, less costs of suit. After his appointment, and advertisement of the property, Munger had a right to receive this money. He was the trustee or agent of both parties, and a tender to him was in effect a tender to the beneficiary. And, therefore, while it is admitted that a tender must be made to the principal, or one authorized to act for him, we hold this to be good, because it was made to an authorized and accredited agent, one who was about to sell the property—who had the deed and note in his hands for collection and foreclosure, and to whom, under certain limitations, was entrusted the duty of receiving the money and paying it over to the proper parties.

As to the failure to bring the money into court until after the order was made by the referee, we remark, that it has been held under our statute, in an action at law, that the tender must be kept up; and that a plea of tender, unaccompanied by payment of the money into court, is of no avail. *Johnson* v. *Triggs*, 4 G. Greene, 97; *Mohn* v. *Stoner*, 11 Iowa, 30; *Freeman* v. *Fleming*, 5 Id., 460. The rule is one of very questionable propriety, in view of the provisions of our statute, in a law action. It was so settled, however, as early as 1853, and we have not felt disposed to disturb it. In an equitable proceeding, however, we are unwilling to give it effect. The language of the statute is, that when the tender is not accepted, the party making it may, if he sees fit, retain it in his possession; but if afterwards the party to whom it was made see proper to accept it, and give notice thereof, the subject of the tender must be delivered within a reasonable time, or it will be of no effect. §1815. In this case respondents, at no stage of the case, intimated their readiness to accept the tender. At law, the judgment of the tribunal is either yea or nay, that it is either simply for or against the plaintiff or defendant. There is no power to so mould and shape the judgment as

to make the rights of parties contingent upon the performance of certain things.   In equity the whole matter is before the chancellor.   He can direct that if the money is brought into court by a day named, the relief shall be granted; and if not, that it shall be denied; and can make all needful orders as to costs, if any should be adjudged against a party for his failure to keep his tender good, as it is termed. A court of law has no such power.   And in view of the power possessed by the chancellor, and the provisions of our statute, we hold, that though the money was not brought into court, until directed by the referee, complainant should not, therefore, be denied relief— should not be turned out of court to come in again, with a case which, upon all its essential facts, shows that he has done equity, and has a right, therefore, to demand it.   It is not unlike the distinction, which has been recognized by us, between a law and equitable action, in that class of cases where a deed is necessary to be tendered, by the terms of the contract, before there can be a recovery for the purchase money of the land. Though necessary at law it is not in equity. See *Rutherford* v. *Haven & Co.*, 11 Iowa, 587.

Affirmed.