THE CHICAGO & S. W. R. R. Co. v. THE NORTHWESTERN UNION PACKET COMPANY.

1. **Tender**: CONSTRUCTION OF STATUTE. The phrase "objection to the money," in section 1818 of the Revision has reference, not to the *amount* of the tender, but only to the character of the money; and absence of objection to the amount, at the time tender is made, will not preclude the party from denying its sufficiency on trial.

2. **Carrier**: LIEN FOR FREIGHT: BILL OF LADING: SALVAGE. Where a bill of lading stipulated for the delivery of the cargo upon the payment of "*freight and charges*," and the vessel having sunk, the carrier paid for the recovery of the cargo; *Held*, that the salvage paid was a charge for which the carrier held a lien upon the recovered property.

3. ———: ———. Carriers may release their lien upon part of the cargo, retaining the balance for the charges upon the whole.

4. **Practice**: APPEAL: INSTRUCTIONS. Error will not be inferred from a defect in a single instruction, which is remedied in others. The instructions should be taken as a whole.

5. **Pleading**: REPLEVIN: NO ISSUE AS TO VALUE. Where, in an action of replevin, the allegation of value in the petition is not controverted in the answer, a failure to deny the allegation will not admit it to be true, and that the jury should determine the value upon the evidence submitted.

*Appeal from Muscatine District Court.*

TUESDAY, JUNE 9.

THIS is an action of replevin to recover possession of 329 bars of railroad iron, alleged in the petition to be of the value of $3,600. The petition shows an offer in writing made by

plaintiff to pay the. sum of $400.32 justly due defendant, after deducting certain claims for damages, for the transportation of the iron replevied, and other railroad iron, from St. Louis to Muscatine.

The answer alleges that, in April, 1871, the defendant received at St. Louis, 1,000 bars of railroad iron, to be transported to Muscatine, and delivered to the Chicago, Rock Island and Pacific Railroad Company, the consignee; that by the contract of shipment "the dangers of navigation, fire, explosion and collision were excepted;" that defendant loaded the iron upon the barge Dan. Hewett at St. Louis; that on the same day the barge was loaded she was sunk by a collision with two other barges, caused by violent·wind, and that due care was exercised by defendant in the management of the barge, and to prevent her from sinking. It is averred that the Dan. Hewett was regularly enrolled and licensed, was staunch, strong and seaworthy, well mastered and manned, and in every way fit for the voyage; that the cargo was well and properly stowed, and that the sinking of the barge and cargo was not through negligence or want of care on the part of defendant, but resulted from the perils of navigation and collision. Immediately after the sinking of the barge, it is further alleged, the defendant contracted with The Bell Boat Aid Company to recover the lost barge, agreeing to pay $3.50 per bar for the iron raised, and twelve cents per bar for loading it upon another vessel. There was raised, under this contract, 984 bars, and the charges therefor, were $3,561.96, which were paid by defendant. The freight upon the 984 bars and other iron constituting the same cargo, all numbering 1,083 bars, amounted to $1,057.32. The defendant claims a lien upon the iron replevied, which was a part of the cargo so transported, for the freight upon the whole cargo, and for the amount paid for salvage upon the iron·recovered by The Bell Boat Aid Company.

The cause was tried by a jury, and a verdict had for defendant, and the amount of defendant's lien was found to be $5,082.20.

A judgment was rendered against plaintiff and its secu-

rities upon the replevin bond for the amount of defendant's lien as found by the jury. Plaintiff appeals.

*Richman & Carskadden*, for appellant.

*Henry Jayne, Cloud & Broomhall*, for appellee.

BECK, J.—The principal points made by the assignment of errors are based upon instructions given, and refused by the court. These will be first considered.

I. An offer in writing made by plaintiffs to defendant's agent, to pay defendant $400.32 was shown.

The plaintiff requested the court to charge in effect, that if defendant refused to receive the sum tendered it was its duty at the time, "to make any objection which it might have to the money and also to specify the amount of money required. If no such objections were made, and the amount demanded was not specified, the defendant cannot now object to the tender, and is bound by the same." This instruction was refused. The court directed the jury that "if the agent of the defendant refused the tender without giving any special reason therefor, this would not discharge the plaintiff from paying any further sum to which defendant may be entitled."

<div style="margin-left:2em;font-size:smaller">1. TENDER: objection to amount.</div>

The statute upon which plaintiff's objections to these rulings are founded, is in these words: "The person to whom a tender is made must, at the time, make any objection which he may have to the money, instrument, or property tendered, or he will be deemed to have waived it. And if the objection be to the amount of money, the terms of the instrument, or the amount or kind of property, he must specify the amount, terms or kind which he requires, or be precluded from objecting afterwards." Rev. § 1818.

This statute contemplates two classes of objections when a tender of money is made:

1. To its character, *i. e.*, objections founded on the money itself without regard to its amount. The expression used is, *objection to the money*. This has no reference to the amount.

This objection must be made at the time of the tender or it will be waived.

2.   The other objection contemplated relates to the amount of the money.   But the statute does not require such an objection to be made at the time of tender, but simply provides, if it is made, the amount demanded shall be specified. This is the obvious meaning of the provision and is in accord with reason.   As the tender in this case was not of the money itself, but by a written offer, no objection could have been made to the character of the money, and in fact the character of the money is not in question.   Want of objection by defendant's agent as to the amount tendered would not preclude recovery for the actual amount due.   This is the purport of the ruling of the court below.

II.   The court directed the jury that if the barge was sunk by causes over which the defendant had no control, and for which it was not liable, it was charged with the duty of taking all necessary means to save the iron, and for that purpose could employ the Bell Boat Aid Co., to raise and reload the cargo.   If, in order to release the iron from the lien for salvage, defendant paid off and discharged the same, it could hold the iron until repaid for its outlays made for that purpose, as well as for the freight due thereon.

2. BILL of lading : carrier.

It is not denied that it was the duty of the defendant to recover the sunken cargo, and that it had the right to employ another in doing so, paying a just and proper compensation therefor.   Neither is it disputed that the salvors would be entitled to a lien upon the cargo for lawful salvage.   Nor will it be denied that defendant, in order to enable it to perform its contract for transportation, was authorized to discharge the lien for salvage by payment.   The salvage was a charge upon the cargo, and by its payment was transferred to defendant, just as in the case of the payment of any other charge which the carrier would be required to pay, in order to perform its contract for transportation, and which the owner or consignee of the cargo was bound ultimately to pay. The bill of lading, the contract for transportation of the iron,

provides for the very case made by plaintiff, and contempla-
ted in the instructions under consideration.    It stipulates that
the cargo, shall be delivered to the consignee, "he paying
freight and charges."

Regarding the salvage paid by defendant as charges upon
the cargo it comes within the terms of the contract between
the parties, and is to be paid at the same time the freight is
payable.    Under the very terms of this contract the payment
of the freight and charges must be made, to enable the con-
signee or owner to demand or take the cargo.    1 Parsons Mar-
itime Law, 143.    In this view of the case it becomes unnec-
essary to follow counsel in the course of argument pursued
by them.

III.    The court in the instructions ruled that the iron
replevied could be held by defendant until the freight and
charges upon the whole cargo was paid.    It appears that all
the iron shipped except a few bars that were not recovered
from the sunken barge, was delivered at Muscatine, and that
plaintiffs had received from defendant 1,354 bars; the 329
involved in the suit being retained by defendant to secure the
freight and charges upon the whole cargo.    If defendant had
the right to retain all the iron until the freight and charges
were paid, no reason can be given why a part could not be
retained subject to its claim when the balance of the cargo was
delivered to plaintiff.    No possible prejudice resulted, by this
course of dealing, to the plaintiff.

IV.    The court instructed the jury that if they found the
barge which sunk with the iron was sea-worthy, staunch and
strong, and that defendant was not negligent in respect to the
cargo or vessel, but was without blame, in that case the
defendant is not chargeable with negligence even though a
barge stronger and with larger timbers might have withstood
the collision.    This instruction is objected to on the ground
that it fails to present the thought that the barge should have
been reasonably fit for the voyage and the transportation of
the cargo with which she was laden.    But the character here
demanded for the barge, the court, in at least two instruc-
tions, informed the jury must be made to appear from the

evidence in order to excuse defendant on account of the disaster to the vessel.

The jury could not have failed to understand that all of the instructions taken together announce this rule.

V. The petition alleges that the property replevied is of the value of $3,600. To this allegation of value no response 5. PLEADING: is found in the answer. The verdict and judg- replevin. ment are for $5,082.20. Plaintiffs' counsel claim that the judgment cannot be for a sum greater than the value of the property replevied, which is true enough. They insist that as the allegation of the value of the iron is not denied by defendant, it must be taken as true. They therefore argue that the judgment is erroneous.

But counsel's position is overthrown by consideration of the fact that an allegation of value in a pleading is not to be taken as true on account of a failure to controvert it. Rev., § 2917, Code, § 2712. The jury were rightly permitted to determine the value of the property replevied, from the evidence.

We have considered all points arising in the case and found no error in the record.

AFFIRMED.