### L. C. SHAY v. JAMES CALLANAN, Appellant.

**Quieting title:** ACT OF CLERK: KNOWLEDGE OF PRINCIPAL. Where a
1   clerk has authority to open and acknowledge receipt of his principal's mail, the principal will be held to have a knowledge of the contents of the correspondence.

**Request for quitclaim deed.** In an action to quiet title, a request for a
2   quitclaim deed, under Code, section 4226, may be made by letter through the ordinary course of mail.

**Tender:** WHEN OBJECTION TO BE MADE. An objection that a tender is
3   made in a bank draft rather than currency, must be made within a reasonable time, to be of any avail.

*Appeal from Taylor District Court.*— HON. R. L. PARRISH, Judge.

MONDAY, JUNE 13, 1904.

ACTION to quiet title, coupled with a demand that costs, including statutory attorney's fees, be taxed against defendant. The latter filed a disclaimer, and denied that any request for a quitclaim deed or tender of fee therefor had been made. On hearing, decree was entered as prayed, with costs, and an attorney's fee of $40 taxed against the defendant. He appeals.— *Affirmed.*

*W. E. Miller* and *Dudley & Coffin,* for appellant.

*Chas. Thomas,* for appellee.

LADD, J.— On the 11th day of March, 1902, Charles Thomas, as attorney for plaintiff, addressed a letter to the defendant, requesting him to execute a quitclaim deed of an 80-acre tract of land to his client, who had occupied it for more than twenty-five years. A quitclaim deed ready for his signature, and a bank draft, payable to defendant, for $1.25, were inclosed. To this Thomas received the following response: " Office of James Callanan. Des.Moines, Iowa, March 15, 1902. Charles Thomas, Bedford, Iowa — Dear Sir: Your letter of the 11th inst. with quitclaim deed for W. ½, S. E. ¼, 10, 69, 35, for me to execute, is received; also your draft for $1.25. I will quitclaim said land for $5.00 and this is only a nominal charge. If you wish a deed under the statute you refer to, I will wait the twenty days before giving the matter any further attention. Yours very truly, J. Callanan. J. L. C." From defendant's answers to interrogatories attached to the petition it appears that he had in his employ a clerk, with initials as above, who was authorized to open letters received by him, and sign his name to acknowledgments of their receipt. There was no further communication between the parties until September 22, 1902, a few days after this suit had been commenced, when defendant wrote to Thomas, saying that he had first learned of his letter and contents on that day, inclosed the draft, and added: " My attorney advises me that a tender

of a draft is not good, and that a request for a quitclaim deed by letter that I never received is not good. To be legal you should have tendered the money to and demanded the excution of the deed of me in person, and not impose upon me the necessity of writing a letter to return the deed, and paying postage. But now if you will discontinue the suit, and return me the quitclaim deed and the draft, I will waive the defects, and will execute the deed and return it to you." On substantially the same grounds appellant insists that costs and attorney's fees ought not to have been taxed against him. Section 4225 of the Code allows a defendant in an action to quiet title, upon filing a disclaimer, to recover his costs. Section 4226 provides that: "If a party, twenty days or more before bringing suit to quiet a title to real estate, shall request of a person holding an apparent adverse interest or right therein the execution of a quitclaim deed thereto, and shall also tender him one dollar and twenty-five cents to cover the expenses of the execution and delivery of the deed, and if he shall refuse or neglect to comply therewith, the filing of a disclaimer of interest or right shall not avoid the costs in an action afterwards brought and the court may in its discretion, if the plaintiff succeeds, tax, in addition to the ordinary costs of court, an attorney's fee for plaintiff's attorney."

It is not pretended that the letter was not delivered to the defendant in the usual course of the mail. He seems to have so conducted his business as not to have acquired personal knowledge of Thomas' letter until served with the original notice in this action. And it may be conceded that his clerk was without authority to do more than open his mail, and acknowledge the same in his name. He could not well have opened this letter without ascertaining its contents, nor well have avoided reference to these in acknowledging its receipt. Doubtless defendant was not advised of what this particular letter contained, though, for all that appears, he may have known that many of similar import were being received.

1. ACT OF CLERK: knowledge of principal.

What he might have done and learned himself he employed another to do and ascertain for him, and as the clerk, in opening and acknowledging his letters and their contents, was acting strictly within the scope of authority delegated to him, what was said or done therein was done and said by his principal, the defendant. *McPherrin v. Jennings,* 66 Iowa, 622. Not only was the letter delivered then, but the defendant was charged with knowledge of its contents.

It is said, however, that a request for a deed cannot be made by mail, as this would necessitate the writing of a letter, and the payment of postage for its transmission. The very object in exacting the payment of a fee is to cover the expenses incident to the delivery as well as the execution of the deed. The statute does not prescribe the mode of delivering, and, if the trouble of writing a letter and expense of postage is too onerous, resort may be had to any other adequate method. To avoid costs, however, delivery in some way must be made by the defendant. A tender in writing is expressly authorized by section 3061 of the Code, and, as the manner of making the request for the deed is not pointed out, it is immaterial whether orally or in writing. This case is not ruled by *Lawless v. Stamp,* 108 Iowa, 601. There the request never reached Mrs. Stamp; here the letter was delivered to defendant. There she knew nothing of its contents; here defendant ascertained through his agent, with authority conferred for that express purpose, precisely what was desired. The record discloses that this is one of many similar transactions in which the same clerk has attempted to cajole landowners out of fees in excess of those fixed by statute, and the defendant ought not to be permitted to avoid liability by any scheme of shielding himself from deriving personal knowledge of a demand and tender of this kind by delegating the duty of examining his correspondence to another.

2. REQUEST FOR QUITCLAIM DEED.

II. Appellant also insists that the tender of the fee should have been in money, instead of bank draft payable

to him. Had this objection been made within a reasonable

**3. TENDER:** *when objection to be made.* time, it may have been of some avail. After retaining the draft for nearly six months, it came too late. Section 3063 of the Code requires that " a person to whom a tender is made, must at the time, make any objections which he may have to the money, instrument or property, or he will be deemed to have waived." This has reference to the kind or character of the money, and not to the amount. *McWhirter v. Crawford,* 104 Iowa, 550. Payment by check or draft is common in business transactions, and the courts uniformly hold that, in the absence of objection, a tender of either is quite as effective as though made in currency of the United States. This is on the ground that, in event of exception thereto, the party sending should have the opportunity of getting the money and tendering it instead of its apparent equivalent, the draft or check. *Jennings v. Mendenhall,* 7 Ohio St. 257; *Mitchell v. Vermont C. M. Co.,* 67 N. Y. 280; *McGrath v. Gegner,* 77 Md. 331 (26 Atl. Rep. 502, 39 Am. St. Rep. 415); *Gradle v. Warner,* 140 Ill. 123 (29 N. E. Rep. 1118); *Young v. Harris,* 2 Cromp & J. 14. See *Harrison v. Legore,* 109 Iowa, 618.— AFFIRMED.