FRED H. BRAUN et al., Appellees, v. W. H. COX et al., Appellants.

**BILLS AND NOTES:** Payment—Acts Constituting. Absolute payment of a promissory note is established by a showing that the payee received *as payment* from his collecting agent the full amount of the

note, and thereafter retained said amount, and that his right so to do was not questioned by anyone; and this is true even though it does appear that the check which was forwarded to the collecting agent in payment of the note went to protest.

Headnote 1:   8 C. J. p. 568.

*Appeal from Linn District Court.*—F. L. ANDERSON, Judge.

JANUARY 18, 1927.

Defendants Cox appeal from a judgment against them upon a promissory note.—*Reversed.*

*Guy A. Miller, Fred A. Utterback,* and *Harland C. Robbins,* for appellants.

*Treichler & Treichler* and *Ring & Hann,* for appellees.

MORLING, J.—Defendants' note sued upon and real estate mortgage securing it were placed by plaintiffs, the holders, in the possession of the Security Savings Bank of Cedar Rapids, or of its assistant cashier, Kearney, personally, for collection. For the purpose of providing for their payment, defendants negotiated with the Old Colony Company of Des Moines a new loan secured by mortgage on the same property. On October 15, 1924, the Old Colony Company wrote to the Security Savings Bank a letter, inclosing its check on the United State Bank of Des Moines, payable to the order of the Security Savings Bank, for the full amount owed plaintiffs. We find it necessary to discuss only the question whether this remittance and the receipt of its proceeds by the plaintiffs operated as absolute payment, or whether in legal effect it was conditional only, and never became absolute.

The letter of October 15, 1924, just referred to, stated that the check was in full payment, and requested the Security Savings Bank to send a satisfaction. The letter and check were received by the Security Savings Bank on October 16 (possibly 17), 1924. As it called for the attention of Mr. Kearney, and did not appear upon the bank records to be a bank matter, the letter and check were placed on his desk. Mr. Kearney was out of the bank, or engaged with other matters, on the 16th and

17th, so that the letter and check did not come to his attention until Saturday, the 18th. On the 18th, he put the check in the collection department of the Security Savings Bank, but too late to have it go out on that day. He did, however, on that day, the 18th, sign a cashier's check on the Security Savings Bank, payable to plaintiff, for the same amount as that of the check on the United State Bank. Mr. Kearney also on October 18th wrote a letter to the Old Colony Company, ''enclosing herewith the note and mortgage of Mr. W. H. Cox for which you sent us your check for $3,097.50,'' stating that a release would be sent. The Security Savings Bank check was given to plaintiff on Monday, and on the same day the United State Bank check was put in the regular course of clearing by way of Chicago. The check was received in Chicago on the 21st, and mailed to Des Moines the same date, arriving at Des Moines on the 22d. The United State Bank did not open its doors after the 21st. Consequently, the check was protested on the 22d, and notice of protest mailed to the Security Savings Bank on the same date. On October 24, 1924, the Security Savings Bank wrote the Old Colony Company, stating:

''We received notice of protest this morning and will be glad to return the item to you as soon as we get some sort of remittance to replace it. In the meantime, we presume you might as well send the old mortgage papers back to us in accordance with your agreement over the telephone, as of course our customer refuses to deliver a release until he gets his money. We have no other interest in this matter as you know, except as a collection item, * * *''

On October 25, 1924, the Security Savings Bank sent the protested check back to the Old Colony Company, stating that it had not yet received the mortgage papers. The letters which we have referred to as written by the Security Savings Bank were written on its stationery, and were signed by Mr. Kearney, as assistant cashier. We do not deem it necessary to go into the contested question whether the business of making the collection was that of Kearney individually, making use of the Security Savings Bank as subagent, or whether the Security Savings Bank was collecting agent, rather than subagent. On October 27, 1924, plaintiffs caused the Security Savings Bank check to be presented, and the Security Savings Bank, with full knowl-

edge of the dishonor and protest of the United State Bank check, paid its own check. The plaintiffs have ever since retained, and, so far as the record shows, without the raising of any question against their right thereto, the proceeds of this check. About October 30, 1924, Treichler & Treichler, who had been acting as attorneys for the Security Savings Bank, were employed, through Mr. Kearney. We infer from the record that the Old Colony Company had sent back to the Security Savings Bank the check, by letter dated October 27th. The attorneys Treichler & Treichler on October 30th wrote to the Old Colony Company:

"Your letter of the 27th to Security Savings Bank relative to the W. H. Cox mortgage is referred to us as attorneys for the bank, and for Mr. Braun, the owner of the note and mortgage. We do not understand what you claim was not proper in presenting the check for payment, as the check passed thru the usual course for collection. * * * we do not see why Mr. Braun should suffer loss by reason thereof. Please return to us, or the Security Savings Bank, the note and mortgage, or send the amount due thereon. We enclose herewith the unpaid check. * * *"

One of this firm of attorneys testified:

"At the time this letter was written, it was following, and immediately after, a conference with Mr. Kearney, who had asked me to come to the bank. He had taken the matter up with Mr. Scott, the president of the bank, and I merely got the substance of the matter, and at that time knew nothing about how the check had been sent, * * * only I knew from what Mr. Kearney had told me that he was acting for Mr. Braun."

On December 24, 1924, petition in this case was filed, asking for judgment on the note and foreclosure of the mortgage. On January 2, 1925, the plaintiffs personally, without consulting the attorneys, dismissed the case. On March 4, 1925, plaintiffs filed motion to reinstate, which was sustained on March 23, 1925. The plaintiffs in their motion to reinstate made affidavits, one of them (by plaintiff wife), stating that, prior to the commencement of the suit:

"I conferred with no one, and knew nothing about the commencement of the suit; that, after the above suit was begun, and while pending, I conferred with a layman, and in whom I

had confidence, and he advised me to get the check which Mr. Kearney had handed my husband, cashed, and that I would have no further interest in the matter, and need give no further attention to the matter; and he further advised me that we were out of it, and to stay out of it, and to dismiss the suit. That I made no other inquiries, and relied absolutely upon the statements thus made to me, and thereupon told my husband, Fred H. Braun, about the statements made to me; and, relying thereon, my husband dismissed the suit, without conferring with Mr. Kearney, or our attorneys of record, who Mr. Kearney had employed. * * * That, when plaintiffs' attorneys asked us why we had dismissed the case, and informed us that we had an interest in the suit, we then sought advice of other attorneys, and learned that the advice of our confident friend was a mistake of law and facts.''

Kearney made an affidavit that defendants refused to make payment; and he ''advised plaintiff to bring suit to recover upon said note and mortgage, which the plaintiff Fred H. Braun approved, and I thereupon employed attorneys to prepare a petition, which was approved and verified by the plaintiff Fred H. Braun;'' that he later learned that plaintiffs had dismissed the suit, ''and that the plaintiffs were misled by an outside party into believing that they had no interest in said action because they held my check, notwithstanding that I have not been reimbursed for the said advancement and that I personally have no cause of action against the defendants.''

The plaintiff F. H. Braun, when called as a witness for defendants, testified, on cross-examination:

''I did not talk with any other member of the bank other than Mr. Kearney before the time that Mr. Scott and you called upon me. That was after I had received this check from Mr. Kearney, Exhibit D. That is the first time I talked with Mr. Scott or any other member of the bank. I had taken the matter up with my attorney, Mr. Hann, of Ring & Hann, in order to bring suit.''

There is no evidence that the Security Savings Bank or Mr. Kearney have made any claim upon the plaintiffs for a return of the money which they have received. The Old Colony Company had on deposit in the United State Bank, from the time the check was drawn until the United State Bank closed, a

deposit with that bank of more than enough to pay the check. That company's officer testified that it has never made any claim against the United State Bank. Mr. Treichler testified:

"As attorney for the Security Savings Bank, I have made an investigation as to the assets of the United State Bank, upon which the check in question was drawn. * * * I called for the records in the United State Bank of Des Moines, relative to the deposits and credits of the Old Colony State Bond Company, and they secured data from the record, and informed me that the Old Colony State Bond Company had on deposit $3,813.84; and since that, I have been informed by Mr. Jones that that claim has been allowed in the sum that I have just stated."

A letter from the banking department to Treichler & Treichler, answering their letter "relative to the claim of the Old Colony State Bond Company of Des Moines against the subject bank," states:

"The claim has been allowed in the net amount of $3,813.94 as a deposit claim * * * It would be impossible for us at this time to give you any definite information as to what would be eventually be paid on deposit claims."

It is undisputed that the defendants instructed the Old Colony Company to pay the note sued upon. It is not denied that the Security Savings Bank, or Mr. Kearney, received the Old Colony Company's check in payment, but the plaintiffs' claim is that it was received only as conditional payment.

Much of the argument is devoted to the question whether the Security Savings Bank and Kearney were negligent in delaying the presentment of the Old Colony Company check. We do not consider it necessary to refer to that question, further than to say that it presented a subject for controversy between the plaintiffs and the Security Savings Bank and Kearney, and obviously furnished a reason for the Security Savings Bank and Kearney to make an effort to force collection from defendants. The Old Colony Company was made a party to the suit. The only allegation in the petition involving it is that, on or about October 15, 1924, the note was sent to that company for payment, "but that the same has not been paid, and the defendant Old Colony State Bond Company refuses to return it, and plaintiffs are credibly informed and believe that the said note is now in the possession of the defendants W. H. Cox and Alma

B. Cox, or in the possession of the defendant Old Colony State Bond Company for the said defendants.'' The Old Colony Company was defaulted for want of pleading.

The defendants and the Old Colony Company intended by the check on the United State Bank to make payment. The Security Savings Bank or Kearney, one or both, received the check as payment. If, as Kearney testified, they received it only conditionally as payment, they were bound to use due diligence in presenting it; and if, by reason of want of diligence on their part, as plaintiffs' agents, the defendants or the Old Colony Company would sustain loss, the check which the Old Colony Company drew on the United State Bank would operate as actual payment. 30 Cyc. 1209. The bank and Kearney, having undertaken the collection, owed a duty to plaintiffs (even though acting without compensation), to use diligence to make the collection. See 7 Corpus Juris 610 *et seq.*; *Serry v. Knepper,* 101 Iowa 372. There is nothing in the record which would warrant the assumption that the plaintiffs have any thought of returning to the Security Savings Bank or to Kearney, under any circumstances, the money which they have collected, or that plaintiffs do not regard the money which they have received as payment. So far as they are concerned, the record leads to the contrary conclusion, and that the present action, while prosecuted in the name of the present plaintiffs, is in reality being prosecuted in the interest of the Security Savings Bank and Mr. Kearney. We do not, however, determine this latter question; nor ought we to determine the rights and liabilities of the Old Colony Company, the United State Bank, and its receiver in an action to which the latter two are not parties. No substantial issue is tendered by plaintiffs as to the Old Colony Company. The Security Savings Bank and Kearney are not parties, and a binding adjudication on the question cannot as to them be made, on this record. Under these circumstances, we should be slow to hold that the money which the plaintiffs have received and retain is subject to any liability to make a refund. That question is not properly before us. When plaintiffs presented the Security Savings Bank check for payment, and received the money upon it, there was, without any doubt, the concurrent intention of the plaintiffs, on the one hand, and the defendants, on the other, that the remittance which the defend-

ants had caused to be made and the receipt of its proceeds by the plaintiffs should operate as absolute payment. They were, respectively, the principals in the transaction. If there had been any previous condition in the receipt of the check as payment, that condition terminated, as to the principals concerned. They had made, on the one side, and received, on the other, the payment as absolute. It was not subject to recall because of a change of mind on the part of the plaintiffs, if there was such a change of mind. The record furnishes no basis for a finding other than that the plaintiffs are in the enjoyment of the absolute payment of the note sued upon. Payment, though made by a stranger, discharges the debt, so far as the creditor is concerned. *Donaldson v. Thousand Springs Power Co.*, 29 Ida. 735 (162 Pac. 334); *Martin v. Quinn*, 37 Cal. 55; *Peoples & Drovers Bank v. Craig*, 63 Ohio St. 374 (59 N. E. 102); *Harrison v. Hicks*, 1 Porter (Ala.) 423 (27 Am. Dec. 638); 30 Cyc. 1221.

The collateral or derivative rights of any of the parties concerned are not before us for adjudication.

The judgment is—*Reversed.*

EVANS, C. J., and STEVENS, FAVILLE, DE GRAFF, and ALBERT, JJ., concur.