LEONARD RALPH WATSON et ux., appellees, v. BRUCE CHAPMAN et ux., appellants.

No. 48174.

(Reported in 55 N.W.2d 555)

November 11, 1952.

Hess & Peters, of Council Bluffs, for appellants.

Tinley & Tinley and Ross F. Caniglia, all of Council Bluffs, for appellees.

THOMPSON, J.—On March 25, 1947, plaintiffs entered into a written contract by which they agreed to purchase and defendants agreed to sell certain real estate in Pottawattamie County, Iowa, described as Lots 15 and 16 in Block 18, Benson's First Addition to Council Bluffs, for the sum of $4200. Three hundred dollars was paid down, and the balance of the stipulated sale price was to be paid "monthly" in installments of $25, or more, to be applied upon interest on unpaid balances and the remainder on the principal sum.

All payments due were made to and including January 26, 1951, at which time there remained a balance unpaid on the principal of $3305.26. On February 6, 1951, plaintiffs entered into an arrangement with one Joe Passer by the terms of which they borrowed the sum of $500; an additional amount not to exceed $358 due for some new siding and other repairs on the house located on the above-described real estate; and the additional sum of $3305.26 then due to the defendants. The loan agreement recites the amount to be loaned to the plaintiffs by Passer as $4163.26, which is the total of the three items set out above. As security plaintiffs assigned their contract with defendants to Passer, and also gave him a quitclaim deed to the property. He then entered into another written contract with them, agreeing to resell them the real estate in question for the sum of $4163.26, to be paid in monthly installments of $50 each.

On February 27, 1951, Passer mailed to defendants his check for $25 for the payment due that month. This check was received but was not acknowledged. Apparently it was still in the hands of the defendants, or their attorney, at the time of the trial. The plaintiffs were obligated to keep the property insured against fire and tornado damage. The premium expired on the policy then in force on February 27, 1951. So far as we can tell from the record the custom seems to have been for defendants to pay the premium and to look to plaintiffs for reimbursement.

On March 1, 1951, defendants caused to be served upon plaintiffs a notice of intention to forfeit their rights in the existing contract for these reasons, which we quote:

"1. You have failed to make payment of insurance premium of twelve ($12.00) dollars, which is owing for insurance now in effect on the house and which was paid by the undersigned.

"2. You have failed to make payment of the monthly payment of twenty-five ($25.00) dollars due on February 25, 1951.

"3. You have removed and disposed of a kitchen sink and fixture which was in the house when you purchased same under a contract and the replacement of which will cost thirty-five ($35.00) dollars.

"4. You have failed to maintain and keep up the steps on the front of the house according to contract, and same are completely broken down, and it will cost to replace same the sum of fifty ($50.00) dollars."

The notice closed with the statement that "unless you make payment of the items above set out together with cost of service of this notice upon you within 30 days from date of the service of this notice upon you, the contract * * * will stand fully and completely forfeited."

On March 2, 1951, Passer wrote defendants a letter, shown in the record as Exhibit 6, which is set out herewith:

"March 2nd, 1951

"Bruce and Hester Chapman
810 North 30th Street
Council Bluffs, Iowa

"Dear Mr. and Mrs. Chapman:

"Please find an additional check for $25.00, payment on 3012 Avenue H, for Leonard Ralph and Rachel Margaret Watson and tell us if the Watsons owe any insurance monies as we want to pay it, and we are asking you to deliver us your abstract as we can bring it down to date or take it to our attorney, Henry K. Peterson's office.

"Sincerely yours,
"Joe Passer."

On March 7, 1951, Passer sent to defendants another check for $25 and another in the same amount on March 17. Each of these checks, and the one sent on February 27, 1951, bore the notation "Payment on 3012 Avenue H." On March 17 Passer sent another check in a letter saying it was to be applied on the cost of bringing the abstract of title down to date, and asking that the abstract be delivered to his attorney. On March 30, 1951, Passer sent another check in the sum of $50, "to apply on 3012 Avenue H." This last check was returned by defendants; but those of February 27, March 2, March 7, and March 17 were retained by them until the time of the trial some months later, and not deposited for payment. So far as the record shows no reply was made to any of Passer's letters.

On April 2, 1951, the defendants filed with the county recorder the notice of forfeiture, with affidavit of service. To prevent them conveying or encumbering the premises, plaintiffs on April 18 secured a temporary injunction. Their petition in this action was filed on April 16, 1951. They asked as primary relief that specific performance of their contract with defendants be decreed. They also asked damages and for costs and expenses, including attorney fees. The trial court granted the relief as to specific performance, made the temporary injunction permanent, and taxed costs to defendants. His decree is silent on the matters of damages and of attorney fees as part of the costs, which in effect denied plaintiffs relief on these points. However, they do not appeal, so we have before us only the questions presented by defendants' appeal from that part of the decree adverse to them.

Defendants' complaints of the rulings of the trial court are these: 1. The notice of forfeiture was in proper form, was properly served, and, since no redemption was made, all of plaintiffs' right, title and interest in the property was terminated; and 2, the plaintiffs, having sold and assigned their interest in the contract, are not the real parties in interest and have no standing to prosecute this action.

I. We shall assume, without deciding, that the notice of forfeiture was in proper form and was properly served. A much different holding is required, however, on the question of redemption. Defendants say they had no notice of Passer's place

in the situation; that they were not informed he was an agent for plaintiffs, and they were not bound to accept payment from a mere interloper or a stranger to the contract. That their position here is highly technical is most apparent. They had Passer's check for the required amount of the February payment before they served their notice of forfeiture; or at least we assume it would have so reached them in the ordinary course of the mails, since it was sent on February 27 and their notice of forfeiture was served on March 1. The check bore the notation that it was a payment on the property in question. But, assuming they did not then know Passer's interest, they were notified he was acting for the Watsons by his letter of March 2 when he told them the check enclosed was a "payment for Leonard Ralph and Rachel Margaret Watson."

We said in Braun v. Cox, 202 Iowa 1244, 1251, 211 N.W. 891, 893, that, "Payment, though made by a stranger, discharges the debt * * *." We need not determine whether this holding can be distinguished, nor longer discuss defendants' contention at this point. Long before the expiration of the thirty-day redemption period they had notice by this letter that Passer was acting for plaintiffs. His exact relation to them was of no concern to defendants; it was sufficient for them that they were advised he was tendering payment for the contract purchasers, the plaintiffs herein.

It is true defendants say they did not receive all of the letters which Passer claims to have sent them during this period, from February 27 to March 30, 1951, inclusive. But that they received the letter of March 2 is evident because they produced at the time of the trial the $25 check which was contained and referred to therein.

 It is clear that so far as the payments on the principal and interest of the contract were concerned, plaintiffs, or Passer acting for them, as defendants were advised, had tendered much more than the amount due before the expiration of the redemption period. In all, Passer's checks, totalling $150, were sent to them from February 27 to March 30, inclusive. Only the $50 check of March 30 was returned. No complaint was made by defendants because the payment was tendered by check. Section

538.8, Code of 1950, says: "* * * The person to whom a tender is made must, at the time, make any objection which he may have to the money, instrument, or property tendered, or he will be deemed to have waived it."

This has been held to apply to the method of payment rather than to the amount. McWhirter v. Crawford, 104 Iowa 550, 72 N.W. 505, 73 N.W. 1021; Chicago & S. W. R. R. Co. v. Northwestern Union Packet Co., 38 Iowa 377. But it does preclude objection to the form of tender if not made at the time of the offer. Steckel v. Selix, 198 Iowa 339, 197 N.W. 918; Shay v. Callanan, 124 Iowa 370, 100 N.W. 55.

It is apparent, therefore, that defendants had no just complaint plaintiffs had not tendered full redemption, and more, during the thirty-day period, so far as payment on the principal and interest on the contract of sale and purchase was concerned. They also allege, however, that they were entitled to forfeiture because of other defaults, which they list: Failure to pay a $12 insurance premium, removal of a kitchen sink of the value of $35, failure to maintain a flight of steps, replacement cost of which would be $50, and failure to pay the cost of serving the notice of forfeiture in the sum of $2.07.

██ The evidence shows, without substantial contradiction, that the sink is still in the house and the steps are in the same condition as when plaintiffs purchased the property. We need not determine whether defendants would be entitled to forfeit the contract for such delinquencies since the evidence negatives their existence.

As to the insurance premium, the previous policy had expired on February 27, 1951. It appears, as we understand the record, that the Chapmans had paid the previous premiums and had then been reimbursed by the Watsons. One day, February 28, intervened between the date of expiration of the previous policy and the service of defendants' notice of forfeiture. Whether there was a real default in payment of the premium on the new policy we doubt. Defendants do not claim they had notified plaintiffs of the amount due them, and it is apparent they had given no real opportunity for the Watsons to pay. In addition, they had in their hands, in the form of Passer's checks dated February 27, March 7 and March 17, for $25 each, much

more than enough to make the current payments of $25 per month and any amount due for insurance. True, the checks each bore the notation "Payment on 3012 Avenue H", but we think this was broad enough to permit application of the funds to anything due under the contract. Every item which plaintiffs were bound to pay was a payment on the described property. In addition to this, Passer's letter of March 2 contained this: "Please * * * tell us if the Watsons owe any insurance monies as we want to pay it * * *." No reply was made by defendants.

 This leaves only the matter of the cost of serving the notice, in the amount of $2.07. It seems unthinkable that a court of equity would permit the forfeiture of all rights of the purchasers, who had paid nearly $900 on their contract and had expended several hundred dollars in improving the property, because of this default. Forfeitures are not favored by the law, and a forfeiture such as defendants are attempting here has peculiarly little to recommend it. But we need not put our decision as to the matter of costs of serving notice on broad and general equitable principles alone. By holding the Passer checks as they did, without rejection or complaint, defendants lost any right they might have had to insist upon a forfeiture. A tender of all substantial sums due under the contract, and more, was made to them. They owed a duty either to return the tendered payment within a reasonable time or to accept it. We are not here concerned with the question of whether the Passer checks retained by defendants amounted to payment on the sums due or to become due under the contract. The question is as to whether, by their conduct, defendants lost their right to insist upon forfeiture. We hold that they did. In Hawkins v. Fuller, 116 Or. 433, 439, 240 P. 549, 551, the question arose as to the right of the plaintiff to resort to the acceleration clause in a note and mortgage which provided that upon failure to pay interest when due the mortgagee might declare the whole amount of principal and interest to be payable. The defendant mortgagor had tendered a check for the interest which reached plaintiff four days after it was due. Plaintiff retained the check for several days, then returned it and commenced his foreclosure action. The Oregon Supreme Court said:

"Having taken the check without objection 'at the time' when given, as it was, in payment of the interest, it was the plaintiff's duty to treat the check according to the due course of such commercial paper and present it for payment at the bank upon which it was drawn, giving prompt notice to the drawer in case of dishonor. If it had not been paid, he then could have returned it and pressed his original cause of action; but his retention of the check without objection postponed his right to commence his action. Checks are so universally employed in business transactions as a means of discharging debts that it would be intolerable to allow a creditor to take his debtor's check without objection and retain it without an effort to collect it for several days and then bring action on an accelerating clause when he had lulled his debtor into a sense of security."

The quotation is long, but is so apropos of the situation in this case that we have set it out in full. To the same effect is Conde v. Dreisam Gold Min. & Mill. Co., 3 Cal. App. 583, 86 P. 825. In Sheriff v. Hull, 37 Iowa 174, 176, an action for breach of covenants of warranty in a deed by failure to pay taxes, we held that the defendant having made a tender, which the plaintiff did not reject, there could be no recovery for interest and costs, even though the tender was for an insufficient amount. See also Shay v. Callanan, supra, 124 Iowa at 373, 374, Guengerich v. Smith, 36 Iowa 587, and Hayward v. Munger, 14 Iowa 516.

II. The only objection made by the defendants to plaintiffs' prayer for specific performance, other than their claim above discussed that the Watsons' rights had been lost by forfeiture, is the action was not brought in the name of the real party in interest. This is predicated upon the contention that they had assigned their contract and given a quitclaim deed to Passer. But the record shows without dispute that these conveyances were made as security only, and they are still the equitable owners of the real estate involved here. Both the plaintiffs and Passer testified to this, and Passer thereby foreclosed any possible claim he might make that any other situation existed. See First Trust & Savings Bank of Blanchard v. Johnson, 202 Iowa 799, 800, 801, 211 N.W. 373; Votruba v. Hanke, 202 Iowa 658, 660, 210 N.W. 753.

■ No other reason for denying specific performance to the plaintiffs is argued, or even suggested, by defendants, nor do we see any. The contract is definite and certain as to all details of the agreement. We think, however, that the trial court's decree leaves some doubt as to the exact manner of performance ordered. The contract provides for installment payments, and we are unable to say from the record whether plaintiffs ask to be permitted to go forward with the monthly payments, or whether they intend to make payment in full, as they are permitted to do by the clause providing for payment at the rate of $25 "or more" monthly. They may continue to make their monthly payments as stipulated, with defendants ordered to accept them and carry on the contract on their part in accordance with its terms; or plaintiffs may make payment in full at any time. In any event, when their payments are completed defendants must make and deliver a deed as provided by the contract. See Carter v. Bair, 201 Iowa 788, 208 N.W. 283.

III. The injunction now in force, however, goes too far. The question is not raised by defendants' assignments of error, but we think the restraining order should be modified so defendants may convey or encumber their legal title, if they so elect. So long as the plaintiffs' contract is in force and being performed defendants have no other interest than a legal title held as security for unpaid balances. This they should have the right to deal with as above suggested.

The decree of the trial court is clarified and modified in accordance with the last paragraph of Division II, and with Division III. Costs taxed to defendants.—Modified and affirmed.

All JUSTICES concur.