**Donald LETT, Appellee,**

v.

**Alma S. GRUMMER, Appellant.**

**No. 64936.**

Supreme Court of Iowa.

Jan. 14, 1981.

Mark R. Gillett of Allbee, Gillett, Wilson, Conway & Allison, Muscatine, for appellant.

Douglas E. Johnston, Muscatine, for appellee.

Considered by REYNOLDSON, C. J., and UHLENHOPP, HARRIS, McCORMICK and McGIVERIN, JJ.

UHLENHOPP, Justice.

The question we must answer in this appeal is whether a vendor of land had ground to forfeit an installment sale contract of realty under chapter 656, The Code 1979. That statute authorizes forfeitures under specified conditions and procedures on thirty days notice.

We reduce the case to essential facts as of the time in question. The action is in equity and we therefore find the facts anew. *Freese Leasing, Inc. v. Union Trust & Savings Bank*, 253 N.W.2d 921, 925 (Iowa 1977).

Plaintiff Donald Lett and his then wife Joyleen bought 160 acres of land from Joyleen's parents on an installment payment contract. Joyleen's father subsequently died, and her mother, defendant Alma S. Grummer, acquired the entire interest of the vendors. Later Donald and Joyleen divorced, and by agreement and decree Donald acquired 90 acres of the farm subject to the terms of the contract. Still later both Donald and Joyleen married other spouses, and bad feeling developed between Mrs. Grummer and the Letts. Mrs. Grummer would drive by the Lett 90 acres and examine the buildings through binoculars. Joyleen's portion of the farm is not involved here.

The 90 acres contained the buildings. The outbuildings were not in use and were in poor condition; the Letts occupied the house. Donald painted the house inside and outside, installed a shower, laid carpet upstairs and downstairs, and re-roofed both the house and garage.

With the increase in land prices, the 90 acres was worth about $300,000 at the time involved in this case. Of this amount, the buildings were worth only about $5000. Donald paid the installments on the contract when due and owed a balance of $16,000 at the time of the present events.

The record gives the impression that Mrs. Grummer was determined to get the 90 acres back. The contract contains a forfeiture clause and also a repair clause in paragraph 8 which states in part:

> It is further agreed that the Buyer shall keep and maintain said premises and the buildings thereon in as good repair and condition as the same now are, ordinary wear and tear only excepted . . . .

Mrs. Grummer caused a thirty-day forfeiture notice to be served on Donald. In the notice she stated the ground for forfeiture thus:

> In that you have allowed windows in the two barns, the corn crib, the hog house, the hen house and the garage to be broken and have failed to repair said windows contrary to the provision of paragraph (8) of said contract.

The windows in question had four panes per sash; the individual panes were about ten by twelve inches in size. Within the thirty days provided by statute, Donald replaced the broken panes except for six of them in the hog house. This building was obsolete, and Donald testified that he intended to replace it with a new hog confinement facility and that installation of new panes did not make economic sense.

Mrs. Grummer testified at subsequent trial that she did not feel her security on the contract was in any way endangered by the broken windows.

Shortly after the thirty days expired, Donald commenced this suit to have the attempted forfeiture declared null and void because the ground Mrs. Grummer asserted was "trivial and insignificant." He also deposited in court the full balance under the contract, and demanded a deed. The trial court held that the purported forfeiture was null and void but refused to require Mrs. Grummer to accept the balance on the contract or to convey the land.

Both parties appealed. Although they raise additional issues, we find three questions to be determinative.

I. Mrs. Grummer contends that since Donald commenced his suit after the thirty days had expired, the suit was too late and the contract stood forfeited.

We answered a similar contention in the negative in *Skubal v. Meeker*, 279 N.W.2d 23, 26 (Iowa 1979) ("The fact that a contract has been forfeited would not appear to be a bar to the cancellation of a forfeiture; indeed it would necessarily seem to be a prerequisite thereto."). We adhere to that view.

II. The second issue, relating to the merits, appears to be a classic illustration of the maxim the trial court cited, *de minimus non curat lex.* Here we have land worth about $300,000, an unpaid contract balance of $16,000, a vendor who acknowledges her security is not in danger, the installments paid to date, six missing ten-by-twelve panes in an obsolete hog house, and a tender of the balance of the price. Equity

abhors forfeitures, *Roshek Realty Co. v. Roshek Brothers Co.*, 249 Iowa 349, 358, 87 N.W.2d 8, 13 (1957); Comment, 51 Iowa L.Rev. 488, 493 (1966), and will not permit a forfeiture under these circumstances. Although this court placed the decision on an additional ground, the court had the following to say of a similar ground for forfeiture in *Watson v. Chapman*, 244 Iowa 56, 63, 55 N.W.2d 555, 559 (1952):

This leaves only the matter of the cost of serving the notice, in the amount of $2.07. It seems unthinkable that a court of equity would permit the forfeiture of all rights of the purchasers, who had paid nearly $900 on their contract and had expended several hundred dollars in improving the property, because of this default. Forfeitures are not favored by the law, and a forfeiture such as defendants are attempting here has peculiarly little to recommend it.

*See also Bettis v. Bettis*, 228 N.W.2d 193, 195 (Iowa 1975) (situation similar to present one of attempted forfeiture following dissolution); *Empson v. LeGlue*, 113 So.2d 9, 11 (La.App.1959); *Redman v. Whitney*, 541 S.W.2d 889, 892 (Tex.Civ.App.1976); Annots., 16 A.L.R. 437 (1922), 40 A.L.R. 182 (1926), 31 A.L.R.2d 321 (1953).

We realize that this is not a case of *contract* forfeiture, where chancery assumes broad jurisdiction to relieve against inequity. 27 Am.Jur.2d *Equity* § 77 (1966); 30 C.J.S. *Equity* § 56 (1965). In this case we are under *statutory* forfeiture, and we must enforce the statute as we have recently held. *Miller v. American Wonderlands, Inc.*, 275 N.W.2d 399, 403 (Iowa 1979). *Miller*, however, was entirely different for the present case and from *Watson*. The purchaser had repeatedly missed payments and had let liens of $13,300 accumulate against the property, and the default was "flagrant" and "stubbornly deliberate." While we carry out chapter 656 according to its terms, we read it strictly as to the vendor. *Kilpatrick v. Smith*, 236 Iowa 584, 593, 19 N.W.2d 699, 703 (1945). We hold that under the circumstances of this transaction, the default, if it was a default, was too miniscule to permit forfeiture.

III. In this court Donald still insists that he is entitled to pay off the balance of the contract and have his deed. As the trial court held, however, the law has long been to the contrary here and elsewhere. Mrs. Grummer cannot be compelled to take the money until it is due. *Anderson v. Haskell*, 45 Iowa 45, 47 (1876); *Annot.*, 17 A.L.R. 866 (1922).

We thus uphold the decree of the trial court, and tax the costs to Mrs. Grummer.

AFFIRMED ON BOTH APPEALS.