Louise Schnuettgen, Appellee, v. R. H. Mathewson, Appellant.

January 8, 1929.

J. A. Berry and Stason & Knoepfler, for appellant.

Bennett Cullison and Jepson, Struble, Anderson & Sifford, for appellee.

Evans, J.—The contract sued on is a rather unique one, and one which presents difficulties of interpretation and of classification. It is as follows:

"Agreement.

"This agreement made and entered into by and between Louise Schnuettgen of Earling, Iowa, party of the first part, and R. H. Mathewson, president of the Farmers National Bank, Wakefield, Nebraska, party of second part, as follows:

"The said party of first part being owner of mortgage covering north fractional one half of Section 19, Township 89, Range 46, west of the 5th P. M., said mortgage being recorded February 2, 1923, in Book 272 of Mortgages, on page 128, Records of Woodbury County, Iowa, and whereas the said party of second part has, or soon will acquire title to above described land, covered by said mortgage, and agrees to pay all taxes accrued, and becoming due, and pay all interest on first mortgage to Peters Trust Company and second mortgage to said first party from February 1, 1924, to maturity of said loans, and it is agreed that should said second party desire an extension of three years from maturity of said second mortgage from February 1, 1926, at same rate, namely six and two thirds per cent, said first party agrees to grant such extension, provided second party shall pay said first party in cash February 1, 1926, the sum of six thousand dollars, and extend balance of mortgage as specified above, provided said second party or his assigns shall have kept all interest and taxes paid promptly.

"This agreement binding on both above parties and their assigns, and heirs of first party.

"Signed at Earling, Iowa, this 1st day of October, 1924.

"[Signed] Louise Schnuettgen,
"R. H. Mathewson."

The petition set forth this contract, and alleged that the defendant had failed and refused to pay the taxes, and failed and refused to pay the interest on the first mortgage, and had  failed and refused to pay the interest on the second mortgage, to the total amount of (as amended) about $8,000. A perusal of the contract and of the allegations of the petition concerning the same conveys no intelligence to the reader as to what

rights have accrued thereunder to the plaintiff, or as to what issues are tendered in her pleading. The contract becomes intelligible only as it has been supplemented by oral evidence and by certain other writings. In that respect, the contract between the parties may fairly be deemed to be partly in writing and partly oral. The land described in the contract was a half-section farm, first owned and mortgaged by one Grover. He had executed a first mortgage for $28,000 to the Peters Trust Company, and a second mortgage for $36,000 to the plaintiff. One Kellogg, a relative of Grover's, had some interest in the ownership, not of record, and he was active in bringing about the negotiations which resulted in the contract. The plaintiff is an elderly lady, living at Earling, and did not personally carry on the negotiations. She was represented in these by Kohles, a son-in-law. The defendant is a banker at Wakefield, Nebraska. He appears to have been an unsecured creditor either of Kellogg's or Grover's, or both. Kellogg proposed to secure him by conveying the title to him as security, thereby making him a junior incumbrancer of the land. As between Kellogg and the defendant, the purpose appears to have been to obtain for the mortgagor sufficient additional credit to pay the accruing interest on the two mortgages and to pay the taxes, in order to avoid foreclosure of the mortgages. The taxes for one year were already past due, and perhaps one semiannual installment of interest on each mortgage. It was pursuant to this plan that the contract sued on was executed. The defendant entered into possession of the land, after receiving the deed, and farmed it for the year 1925. He applied all the proceeds of the farm operations to the payment of the obligations referred to in the contract. These proceeds, however, were insufficient to meet the call of the contract.

There is some dispute between the parties—not a very material one—as to the date upon which the contract was signed. It purports to have been signed on October 1st, and the contention for the plaintiff is that it was executed on that day or the day following; whereas it is the contention of the defendant that it was signed by him on the last day of November or the first day of December. The contract was drawn at Earling, and was signed there on the first day of October by the plaintiff. It was taken by her son-in-law, Kohles, to Wakefield,

and presented to the defendant on the following day. Kohles testified that it was immediately signed by the defendant, and the whole transaction closed. It is the contention of the defendant, as witness, that it was not signed on that day, although it was discussed, and that the transaction was left open, to await the conveyance to the defendant. It is undisputed that Kohles returned about the last day of November, and that further negotiations were resumed, and that an additional paper was signed on that day, which will be referred to later. That was the day upon which the defendant received conveyance of the title. A careful reading of the evidence satisfies us that the transaction was not deemed closed between the parties until the last day of November or the first day of December. The language of the contract shows that it was predicated upon the assumption that the defendant was to receive title to the land. It was as such owner, and not otherwise, that the defendant purported to enter into the undertaking. This conclusion is fortified by the fact that, on the first day of December, Kohles entered into an undertaking which operated materially as representation and inducement to the signing of the contract by the defendant, as will hereinafter appear.

On October 20, 1925, the plaintiff began foreclosure suit of her mortgage by personal service of notice on that date, both upon Grover and wife and upon this defendant, Mathewson. Her petition was filed on October 23, 1925. In her petition she prayed for judgment for the principal only, in the sum of $36,000. She prayed no recovery for interest against either defendant. Decree was entered for her as prayed, on January 5, 1926, for $36,000, and no more.

On October 20, 1925, she likewise began the instant action against the defendant alone, predicating the same upon the written contract above set forth. Both actions were brought in Woodbury County district court, and both were pending therein up to the time of decree in the first action. Pursuant to her foreclosure decree, the plaintiff sold the mortgaged land under special execution on March 5, 1926, and became the execution purchaser at a bid of $30,000, leaving a deficiency judgment of $6,000 against Grover. After execution sale in the foreclosure case, the defendant filed his answer in the case at bar, wherein, among other defenses, he pleaded the bar of the foreclosure de-

cree as a prior adjudication. He also predicated defense upon the provisions of Section 12375, Code of 1924, which provides as follows:

"12375. Separate suits on note and mortgage. If separate actions are brought in the same county on the bond or note, and on the mortgage given to secure it, the plaintiff must elect which to prosecute. The other will be discontinued at his cost."

I. We proceed first to consider the question whether the foreclosure decree operated as a bar to the present action, on the theory that it was a prior adjudication, and that the maintenance of two actions was a mere attempt to split one cause of action. The determination of this question depends upon the nature and the interpretation of the writing which is set up as a cause of action herein. The plaintiff sues upon the writing as upon a *promise to pay.* It is conceivable that the writing might be construed as a mere covenant, for the breach of which an action for damages would lie. But inasmuch as the plaintiff has sued and recovered upon it as an absolute promise to pay, we shall confine our discussion to such interpretation thereof. The interpretation of plaintiff is that the writing constitutes a distinct and independent cause of action, and that it stands upon its own base, as an absolute promise to pay. As already indicated, the contract itself is quite incomplete in its terms, and requires the aid of extrinsic evidence for the disclosure of its scope and purpose. It must be interpreted, therefore, in the light of the circumstances surrounding its execution. Was it independent, as a new or additional cause of action? Or was it a security for a cause of action already existing? If the plaintiff's existing mortgage and the note which it secured, and this contract, constituted but *one debt,* then, under the authorities, a decree of foreclosure of the mortgage operated as a full remedy, and operated to bar another action to recover for any part of the same debt. And this is so even though the decree awarded to the plaintiff less than she was entitled to.

To speak negatively, the contract before us was not an assumption of a mortgage by the vendee as a part of the purchase price, whereby the vendee became primarily liable for the debt; nor was it a novation, whereby the original debtor contracted for release in consideration of the promise of the new debtor to pay

the debt. The new contract created no new asset in the hands of the plaintiff. It did operate as a security to an asset which she already had. In its relation to plaintiff's note and mortgage, the contract has a double aspect. Plaintiff's note was secured by the mortgage. As to the note, therefore, this contract operated as additional security. As to the mortgage, it operated as a promise to pay in part the same debt as was already secured by the mortgage. The plaintiff did not release her mortgage to any extent. Nor did she surrender any right under her note or mortgage which she had against her original debtor. The contract created a new *debtor*, but not a new debt. The right of the plaintiff to sue upon this contract was dependent upon her right to sue upon her note and mortgage. She could recover nothing upon this contract in excess of the interest due her upon her note from her original debtor. Only as a holder of the unsatisfied note and mortgage could she recover at all upon this contract. If her original debtor were to discharge the debt, it would *ipso facto* terminate liability under this contract. She could not maintain an action upon it as a promise to pay, without showing her present ownership of the unsatisfied note and mortgage. Manifestly, this contract was not transferable, as a separate and distinct asset. To be suable at all, it must be by the holder of the note and mortgage. This of itself illustrates that it was not a self-supporting and separate cause of action, but an incident only to a previously existing cause of action. In her foreclosure suit, the plaintiff brought into court, by personal service, both the original debtor and this defendant. She claimed no interest as against either of them, though she was entitled to it as against both of them. She took decree accordingly for the principal sum alone. Such decree became a complete bar to further recovery against the original debtor. Why should it be deemed less so as against the additional debtor? The legal effect of the decree was to say that no interest was due her from her debtor. She necessarily contradicts the legal effect of her decree when she now claims to recover the interest from the additional debtor. The apparent theory of the plaintiff herein was that she would treat this defendant's contract as the equivalent of payment of the interest. If that theory were enforced upon her, she would not have been permitted to maintain her foreclosure suit at all. Her note and mortgage were not due

when she began her suit, except as she was privileged to accelerate the due date because of default in the payment of interest. She alleged in her foreclosure petition that she had elected to declare her note due because of default in the payment of interest. Whose default was it upon which she declared? Not that of the original debtor, because she exonerated him. If it was the default of this defendant, then, upon her theory, she could declare *this contract* due. Such default of this defendant would not render the *mortgage* due unless his contract was an adjunct *of the mortgage.* The plaintiff has, therefore, by her own procedure demonstrated the singleness of her debt and the unity of note, mortgage, and contract. We think it must be held, therefore, that only one debt was due to the plaintiff, and that it was secured both by the mortgage and by the contract.

We have held that a mortgagee may maintain a personal action on his note against the debtor, and may, after judgment therein, foreclose his mortgage. But we have never held that a mortgagee who has foreclosed his mortgage by good personal service may afterwards maintain a separate action upon his promissory note. Indeed, we have held affirmatively to the contrary. *Kenyon v. Wilson,* 78 Iowa 408, and cases therein cited. The reason for the distinction is apparent. The note is the evidence of the debt. When merged in judgment, the judgment becomes the evidence of the debt. Jurisdiction in a foreclosure suit rests in the county where the mortgaged property is situated. A creditor may be able to obtain personal jurisdiction of his debtor where he finds him, without acquiring such jurisdiction in the county where the mortgage must be foreclosed. But when the mortgagee forecloses his mortgage upon personal service, he exhausts the full measure of remedy available to him against such defendant. Judgment against the debtor is prerequisite to the foreclosure of his equity of redemption. If plaintiff has not previously obtained it in a personal action, he must obtain it in the foreclosure action. The scope of the adjudication in a foreclosure decree is as broad as plaintiff's cause of action against the defendants which he has brought into court. The adjudication of the amount of the debt is the first prerequisite of a foreclosure decree. The amount of the debt, as adjudicated, becomes the conclusive basis of the right of redemption. This phase of the law is emphasized by our statute,

Section 12375, above quoted. This statute forbids the prosecution of two suits in the same county upon the mortgage and upon the promise to pay, because a decree of foreclosure will necessarily determine both. To give full effect to this statute, it is quite possible that we should have to hold that a decree in either of such suits would determine both.

The fact that the plaintiff in her foreclosure suit prayed for less than she was entitled to, and took decree accordingly, does not save to her the right to recover by a second action. When she prayed and obtained an adjudication which measured the full liability of the mortgagor as being the amount of the principal debt, without interest, she fixed his status irrevocably. No less did she fix the status of the other defendant,—and for like reason.

In *Kenyon v. Wilson*, 78 Iowa 408, above cited, we said:

"An adjudication is final and conclusive of all matters in a case which the parties could have presented to the court for adjudication in the case. *The law hates a multiplicity of suits, and will not permit a plaintiff to split up his demands, presenting one at a time, in separate successive actions. He must litigate all matters growing out of his causes of action upon which a remedy may be sought in one action. Thus he cannot seek a foreclosure of a mortgage in one action, and in a subsequent action ask for a personal judgment against the defendant. He could have recovered both remedies in the first action, and must be content with what he first recovers.* Hempstead v. City of Des Moines, 63 Iowa 36; Oliver v. Montgomery, 39 Iowa 601; Sweeny v. Daugherty, 23 Iowa 291; Campbell v. Ayers, 1 Iowa [Cole] 257."

In *Merrifield v. Clark*, 199 Iowa 171, we said:

" 'It is a general rule that a judgment is conclusive of whatever might have been litigated in the action in which it was rendered, and that a party must bring forward in one suit all the claims or defenses which he has, which are included in or applicable to the cause of action in suit. Hence, in general, additional facts bearing on the original cause of action, and which might have been presented in the first action, as distinguished from facts which have occurred since that action, will not be sufficient to sustain a new suit.' "

The rule applicable is discussed in 1 Ruling Case Law 358, Section 35, as follows:

"*In a mortgage foreclosure suit, all the relief that the plaintiff is entitled to must be sought in that suit, and if he fails to seek it, he cannot afterwards maintain an action for any relief which he could have obtained in the foreclosure suit, had he asked for it.* For example, if in a mortgage foreclosure suit the plaintiff is entitled to reimbursement for certain taxes paid by him on the property sought to be foreclosed, and he fails to seek reimbursement, his right to reimbursement is gone; for to permit him to maintain another suit for reimbursement would be to permit him to split the action."

An extensive discussion of the same subject will be found in *Smith Lbr. Co. v. Sisters of Charity,* 146 Iowa 454. We are of opinion that only one debt was due the plaintiff, though it was owed by two debtors; that the obligation of the defendant, Mathewson, was collateral to that of the original debtor; and that the decree of foreclosure operated as a complete adjudication of all the rights of plaintiff upon that cause of action, as against either or both of the defendants therein.

One further fact, which confirms this conclusion, should have been stated earlier in this discussion. In her foreclosure petition in the first action, the plaintiff pleaded the contract now sued on, by the following allegations:

"That, on the first day of October, 1924, the defendant, R. H. Mathewson, entered into a written agreement with the plaintiff, under and by virtue of the terms of which the defendant, R. H. Mathewson, agreed to pay all taxes accrued and becoming due on said above described premises; and further agreed to pay all interest on the first mortgage then upon said premises and the second mortgage sought to be foreclosed herein, from February 1st, 1924, to the maturity dates of said mortgages, and the plaintiff makes no claim herein for the taxes and interest agreed to be paid by the defendant, R. H. Mathewson."

It is the contention of plaintiff that by the foregoing allegations she reserved her cause of action. Clearly, there was no reservation in terms. On the contrary, the express terms purported to be a relinquishment of any claim against Mathewson upon such contract.

Nor, indeed, could the plaintiff split her cause of action by mere allegation, or purported reservation of a part thereof. Nor did the decree purport to make any reservation to the plaintiff, as against either defendant.

II. It appears from the record that, at the time of the consummation of the contract relied on by the plaintiff, another contract was entered into between this defendant, Mathewson, and Kohles, the son-in-law of plaintiff, who was representing her in the negotiations with Mathewson. Such contract was as follows:

"This agreement made by and between George J. Kohles and Carrie M. Kohles, his wife, and R. H. Mathewson, in consideration of two agreements, one dated October 1, 1924, and the other dated October 2, 1924, between Louise Schnuettgen and R. H. Mathewson, on connection with the second mortgage held by Louise Schnuettgen on the north half (N½) of Section nineteen (19), Township eighty-nine (89), Range forty-six (46), west, 6th P. M. Woodbury County, Iowa, it is hereby understood that the first parties are owners of ten thousand ($10,000) dollars of the above mentioned thirty-six thousand ($36,000) dollars mortgage, same being in the name of Louise Schnuettgen.

"First parties hereby agree to pay interest on ten thousand ($10,000) dollars of the said mortgage that will be due February 1st, 1925, and also February 1st, 1926. If the three-year extension on said mortgage is made as per the former agreements above mentioned, first parties will continue to pay interest on $10,000 of same until due.

"First parties further agree to pay five thousand ($5,000) dollars of the six thousand ($6,000) dollars payment that is agreed to be paid on February 1st, 1926.

"In consideration of the above, second parties agree hereby to fulfill the former contracts made October 1, and October 2, 1924.

"Dated at Wakefield, Nebraska, this first day of December, 1924.

"Witness:

"Margaret Kellog.

"George J. Kohles,
"Carrie M. Kohles,
"R. H. Mathewson."

It was represented therein by Kohles that he was the owner of $10,000 of the $36,000 mortgage. It will be noted also that the first contract considered in the foregoing division did not specify the sum upon which interest was to be paid. The contract with Kohles purports to relinquish, as against Mathewson, any claim for interest on any excess over $26,000. This contract necessarily operated as a material part of the consideration for the other. From the testimony of Kohles at the trial it appears that the interest of the plaintiff to the extent of $26,000 was prior and superior, as a lien, over the remaining $10,000. From the extrinsic evidence it appears that the mortgage held in her name was for $36,000. From like evidence it appears also that the extent of her interest in such mortgage was only $26,000. It further appears that the mortgaged property was sold at execution sale, and that plaintiff purchased the same at execution sale on a bid of $30,000. She thereby extinguished all the mortgage debt, so far as her interest was concerned. Her bid would pay the full amount of her principal and interest. This being so, she had no interest in the prior incumbrances upon the land, nor in the unpaid deficiency judgment. The deficiency judgment would belong to the son-in-law.

The plaintiff's response to the matters here stated is that Kohles had no authority from plaintiff to enter into the contract in question, and that there was no evidence in support of the claim that he owned $10,000 of such mortgage. The only witnesses used on the trial by the plaintiff were Kohles and his wife. As a witness, Kohles admitted the execution of the contract here considered. True, he testified that it was signed pursuant to negotiations with Kellogg, rather than with Mathewson personally, and that Mathewson's signature was already on the contract when he signed it. As to the ownership of an interest in the mortgage, he testified:

"I had a second mortgage on this land before the plaintiff's second mortgage was made. The present mortgage is all in her name. She agrees to give us $10,000 if she gets all of it. That is the understanding between us. Yes, if she gets her money back, which will be all but $10,000, and the $10,000 is collected, it is ours. Yes, I had that interest in the mortgage in 1924 and 1925."

Also: "We were willing to pay the interest on that amount.

We said we would knock off the interest, pay the interest on $10,000, and pay this $5,000 as it is in the contract."

The plaintiff submitted her case with full knowledge of the contents of the contract thus signed by her son-in-law, and the representation of ownership made therein. Though he was her witness at the trial, she had a right to contradict his testimony if it was not true. She neither repudiated the representation of ownership made by him in the contract itself nor did she dispute his testimony. We think this evidence was sufficient to show that the full extent of plaintiff's interest in the mortgage was $26,000, as principal. The contract of Kohles, therefore, operated upon the remaining $10,000.

III. The decree appealed from herein awarded recovery to the plaintiff, not only for interest upon the $36,000 mortgage, but also for the full amount of delinquent taxes, and for the full amount of interest accrued on the first mortgage from February 1, 1924, to the date of the execution sale, March 5, 1926. So far as is disclosed by the record, the plaintiff had paid none of these items. They simply rested as prior liens upon the land. Some of these interest coupons were held by Kohles, as assignee thereof. Under the assignment to him, the lien of these coupons was subordinated to the lien of the first mortgagee. They still formed a part of the incumbrance upon the land. In placing a bid of $30,000 at the execution sale, the plaintiff took the land subject to the then existing prior incumbrances. At the time of the decree in the case at bar, October, 1926, the land was still subject to redemption. Any redemptioner would have been required to pay the plaintiff the full amount of her bid, with interest, and to take the land charged with all the prior incumbrances. In such event, the plaintiff could have no interest in the question whether the incumbrances were paid or not. As an execution-purchaser, she could stand in no better position than that of any other execution-purchaser, or than that of a redemptioner. She was not suing for damages. She brought her suit upon the contract as upon a promise to pay. But there was no promise to pay the taxes *to her*, nor any promise to pay *to her* interest on the first mortgage. It is manifest, therefore, that these items should not have been included in her recovery.

Other questions are presented and argued; but, in view of

our foregoing conclusions, they lose their importance. For the various reasons herein indicated, the plaintiff's petition should have been dismissed.

It is so ordered, and the decree below is, accordingly,— *Reversed.*

ALBERT, C. J., and STEVENS, FAVILLE, KINDIG, and WAGNER, JJ., concur.