PRODUCTION CREDIT ASSOCIATION OF THE MIDLANDS f/k/a the Eastern Iowa Production Credit Association, Plaintiff–Appellee/Cross–Appellant,

v.

Robert F. RYAN, Charlene E. Ryan a/k/a Charlene Ryan, Defendants–Appellants/Cross–Appellees.

Joseph Ryan a/k/a Joseph F. Ryan, Mary Ryan a/k/a Mary Evelyn Ryan, and United States Department of Agriculture, Agricultural Stabilization Service, Commodity Credit Corporation, Defendants.

No. 87–711.

Court of Appeals of Iowa.

March 16, 1989.

Peter C. Riley of the Tom Riley Law Firm, P.C., Cedar Rapids, for defendants-appellants/cross-appellees.

Dennis D. Jerde and David J. Darrell of Davis, Hockenberg, Wine, Brown, Koehn & Shors, Des Moines, for plaintiff-appellee/cross-appellant.

Heard by DONIELSON, P.J., and SACKETT and HABHAB, JJ.

HABHAB, Judge.

Robert and Charlene Ryan appeal two decisions of the district court which are consolidated here for the purposes of this appeal. In the foreclosure action, the Ryans appeal the rejection of their fraudulent misrepresentation claim. Specifically, they assert the trial court erred 1) in ex-

cluding evidence of an oral promise under the Parol Evidence Rule which was necessary to prove their claim of fraud; and 2) in excluding evidence of a claim and settlement held by Mr. Ryan's father against the law firm of Condon & Peavey. The Ryans further argue the foreclosure judgment barred the subsequent replevin action filed by the same plaintiff, Production Credit Association of the Midlands. We affirm both judgments.

In 1977, the Ryans bought 210 acres of farmland from Robert's parents on contract. Production Credit was assigned that contract as security for financing operating costs. The Ryans subsequently restructured their debt, at the suggestion of Production Credit, in order to reduce the amount of money the Ryans owed Production Credit. In 1983, the Ryans' financial situation worsened. Production Credit became concerned that the Ryans would not be able to service their debt. In January of 1984, Production Credit informed the Ryans that they should make arrangements to pay off their loan. As evidenced by the August 1, 1984, letter agreement, Mr. Ryan agreed in part to secure a loan from the Farmers Home Administration to pay down part of the debt owed to Production Credit. In return, Production Credit agreed to carry the balance of the debt until January 1, 1985, in order to give Robert further time to finance the remaining balance of the loan. Additionally, Production Credit agreed not to proceed with foreclosure prior to January 1, 1985. The Ryans were unable to refinance the loan balance.

The foreclosure action was filed on May 29, 1985. After consenting to judgment on the foreclosure action, a decree was entered. The Ryans counterclaim concerning fraudulent misrepresentation was submitted to the jury, resulting in a verdict in favor of Production Credit.

The plaintiff next brought a replevin action against the Ryans concerning certain personal property and based upon the defaults previously admitted to by the Ryans in the foreclosure action. Production Cred-

it moved for and was granted summary judgment.

## I. COUNTERCLAIM TO FORECLOSURE ACTION

Regarding the counterclaim to the foreclosure action, we review on errors assigned. Iowa R.App.P. 4. We review the evidence in a light most favorable to the trial court's decision. *Kurtenbach v. TeKippe*, 260 N.W.2d 53, 54 (Iowa 1977). Such findings are binding if they are supported by substantial evidence. Iowa R.App.P. 14(f)(2).

### A.

The Ryans first assert the trial court committed error when it allegedly excluded evidence they claim was necessary to support their suit against Production Credit (PCA). To some extent this part of the dispute involves the August 1, 1984, letter agreement of the parties. This letter agreement signed by PCA and the Ryans essentially provides:

PCA agreed to withhold legal action against the Ryans at the present time provided certain conditions were met.

1. Ryans were to obtain a $100,000 loan from FHA and after paying certain third-party obligations the balance of the $100,000 was to be paid on their PCA loan, which at that time was $261,435.89. (This was performed.)

2. PCA was to be given a first mortgage on a farm (130 acres) the Ryans were purchasing on contract from Robert's father. (This was performed by the Ryans securing a deed from Robert's father to the 130 acres and the Ryans in turn giving PCA a mortgage on the same.) The mortgage was given as security for the debt owed PCA.

3. Ryans represented to PCA that they intended to obtain outside financing in an amount sufficient to pay PCA. PCA had to sign a "Nondisturbance Agreement" for FHA prohibiting it from disturbing the Ryans, by foreclosure or otherwise, before January 1, 1985.

4. The final sentence of the letter agreement provided, "It is our (PCA) intention to proceed with the foreclosure ... in the event the indebtedness owed us has not been paid in full by January 1, 1985." (The indebtedness was not paid, thus foreclosure in the main suit was commenced and finalized.)

Notwithstanding the provision in the August 1, 1984, letter of agreement to the contrary, the Ryans claim in their brief that the following representation was made to them: "Ryans were told PCA would continue to finance them if they obtained a deed from the father to the remaining 130 acres, so that PCA could take a first mortgage on that, with the father taking a second mortgage on the contract balance."[1]

The Ryans claim that the representations were made by Attorney John Peavey, who they thought was representing them, but who in fact was representing PCA. They claim Peavey's statement was material to prove fraudulent representation and, therefore, its exclusion by the court was prejudicial. They further assert the evidence was offered to show that a fraudulent representation was made and that it was not offered to prove a provision at variance with those found in the written contract.

But when we examine the record, we do not find that the trial court precluded Mr. Ryan from testifying as to the inducements made to him to bring about the signing of the August 1 agreement. During the course of the direct examination of Mr. Ryan, he was asked by his attorney:

Q. And would you have done that— well, let me back up. Had the lawyer indicated anything one way or another as to how giving that—getting that deed and letting PCA [Production Credit Association] move into first place would increase or decrease your ability to stay in farming? A. He took—

At this juncture, an off-the-record discussion took place at the bench. The trial court wisely made a record in chambers as to what that discussion consisted of. In this respect, the record reveals that the court "... told counsel that plaintiff [this was later corrected in the record to show that the court was referring to the counterclaimant-Ryan] has the right to introduce evidence that tends to show for what reason he was induced to sign the contract...." The court later told counsel "to be abundantly sure that we understand, what I've said is they can introduce whatever evidence they have that goes to inducement to sign the contract." Thereafter, Mr. Riley, Ryan's attorney, continued his direct examination in the following respects:

Q. (By Mr. Riley) Now, Mr. Ryan, I would like to ask you why you were willing to give PCA a first position on the farm that you were buying on contract from your father in August of 1984. A. My lawyer, Dan Condon, said that's what I should do.

Q. All right. And why did you sign the various papers that were presented to you at the meetings on August 1 in Mr. Peavey's and Condon's office and later at Tipton? A. I was told that I should sign those papers.

Q. All right. And what benefit did Mr. Condon hold out to you for signing those papers? A. What benefit did he hold out?

Q. I mean, what—A. None.

Q. Why did Mr. Condon recommend that you give PCA a first position on the farm and sign the various papers that would be presented? A. He said he would—

MR. JERDE: Excuse me. I believe that question has been asked and answered. The question was asked "Why did he do it," "What benefit was there"; and the witness said, "None."

---

1. In their pleadings, Ryans claim that if they did not obtain refinancing through the third party to pay the debt owed PCA, that PCA agreed at the August 1, 1984, meeting not to foreclose if Ryans gave PCA a first mortgage on the 130-acre farm.

Ryans did not pay their debt to PCA by January 1, 1985. PCA declined to extend further credit and proceeded to foreclose their mortgage on the 130 acres. That action has gone to decree, as previously stated.

THE COURT: Was there an answer?

THE COURT REPORTER: Yeah.

THE COURT: Was there?

Q. (By Mr. Riley) Is that what you intended to answer, Mr. Ryan? A. I'm not sure of your question.

Q. What was the benefit that was held out or—let me—let me ask it again in this way. Did Mr. Condon give you any reasons why it was a good idea to give PCA a first position on the farm?

MR. JERDE: Same objection.

A. I would continue farming.

MR. JERDE: Same objection. I believe the witness has already answered this question.

Even though the question had been asked and answered, the court, in its discretion, permitted counsel to rephrase the question. The following took place:

THE COURT: Well, I think he did; I think it's clear that he perhaps misstated himself. And I'm going to allow him to ask the question again.

Q. (By Mr. Riley) Okay. And the question is, what benefit did Mr. Condon hold out in giving PCA a first position on the farm? A. I—I really don't know what it is you are asking me.

Q. What was the benefit that Mr. Condon held out to you, Mr. Ryan, that would accrue to you if you let PCA have a first position on the farm you were buying from your dad? A. He actually give me no benefit.

The subject was then dropped by the examining attorney. Later on in Robert Ryan's examination, his attorney asked him the following:

Q. And tell the jury what you relied on and what are the reasons why you agreed to basically give your first position on your dad's farm to PCA and do all these other things on August 1 of 1984. A. My lawyer said that that's what we should do.

With that question and answer, the examining attorney completed his direct examination. For reasons not entirely clear from the record, the matter once again came up in court chambers. The court once again reaffirmed its position that oral statements would be proper to prove that the contract was induced by fraud. The following dialogue took place between Ryans' attorney, PCA's attorney, and the court:

MR. JERDE [PCA's attorney]: I think you did also rule that it's not even parol evidence in this context, I guess, in the context of your ruling, but that oral statements would be proper to prove that the contract was induced by fraud.

THE COURT: That's correct also.

MR. JERDE: Okay. With that, that's all I need to say.

MR. RILEY: Having—Just so—And just so I've got it clear, you know the Ryans have testified that it was promised by Mr. Condon that this would enable them to stay in farming; and as I understand it, you know, that is one of the representations. And they are—they were ready, willing, and able but for the Court's ruling to, you know, go a step beyond that and say "It was specifically promised that there would be—that they would not foreclose if we signed these"; and that, as I understand it, is the evidence that you're—that you would sustain an objection to.

THE COURT: Not if it's offered as an inducement to sign the contract, no; I would let him testify to that.

MR. RILEY: You think he can?

THE COURT: Yes.

The court, at the conclusion of that hearing which took place on Thursday, gave counsel permission to recall the witness to testify if there was any misunderstanding on its ruling. Trial resumed the following Monday. Ryans claim the court changed its mind as to its Thursday ruling. In this respect, the trial court precluded the attorney from re-examining the witness as to those questions previously asked and that were not answered in the favorable manner expected. We do not believe this to be an abuse of the trial court's discretion.

Our further examination of the record reveals that Mr. Ryan was not recalled. A day or so later, the question again came up. Examining counsel attempted to summa-

rize the court's position. The trial court, quoting from *Moore v. Howe*, 115 Iowa 62, 87 N.W. 750, 752 (1901), in answer to Mr. Riley's summarization of the court's position, stated as its final word on the subject:

The case says, on the allegation of fraud, "... no evidence was admissible of any of the negotiations leading up to the making of the mortgage, unless it appeared that plaintiff believed, and was induced to believe, in signing it, that it contained conditions or stipulations not included therein, or omitted some that he was led to suppose were included."

Additional discussion took place. We will not attempt to characterize or summarize that discussion. Ryans claim they were not permitted to bring forward testimony relating to inducements in the signing of the August agreement.

It was at this point that Ryan's counsel made the following offer of proof, which consists of the segment of Robert Ryan's testimony taken by deposition prior to trial:

Q. Would you identify what has been marked as Deposition Exhibit 8? A. Exhibit 8 is a letter to Robert Ryan that's dated August 1, 1984.

Q. And does your signature appear on there under the acknowledgment? A. Yes, I've signed that.

Q. So you have seen this letter before? A. This one, yes. Yeah, I signed that.

Q. Do you have any disagreement as to this being the terms or at least part of the terms agreed to at the August 1, 1984 meeting? A. Yeah. Except the only problem I have with it is that the verbal agreement that we worked out, and as I said I don't understand all this, and Mr. Peavey was here the day we done this, was that if we done this, PCA wasn't going to foreclose if we give them 130—somewhere in here that has to be wrote, because that's what we was told, that's the terms we signed. Dad signed the paper off and I signed it off. Now, somewhere it has to be in there or we was led down the path.

Parol evidence is admissible to prove fraud that induced signing of a contract.

*International Milling Co. v. Gisch*, 258 Iowa 63, 137 N.W.2d 625, 630 (1965); *Moore v. Howe*, 115 Iowa 62, 67, 87 N.W. 750, 752 (1901). The admission of evidence for this purpose is not in conflict with the parol evidence rule which renders such evidence inadmissible to contradict or vary the terms of a written contract. *International Milling Co.*, 137 N.W.2d at 630. The evidence is not being offered to vary the duties of the parties under the contract, but rather to show a breach of a duty. *See Kimmel v. Iowa Realty Co. Inc.*, 339 N.W. 2d 374, 381–82 (Iowa 1983). We believe under the record before us the court explained several times that Mr. Ryan could testify as to the representations made to him as an inducement to execute the instrument. Such testimony was proper to prove the Ryans' assertion of fraudulent representation. Ryans' counsel attempted to elicit such testimony from his client by direct examination, but each time he was unsuccessful.

We do not think that the offer of proof is of any assistance. Even if the court's statements could be interpreted to exclude the subject of the offer of proof, we do not believe that Ryans' case is strengthened by the offer. The offer, when closely examined, is nothing more than an attempt to inject into the record testimony which examining counsel was unable to elicit from Mr. Ryan during his direct examination. Those questions were not objected to. We do not believe that an offer of proof should be used for this purpose. The court may refuse an offer when the proof would be contradictory of the witness's previous testimony. 88 C.J.S. *Trial* § 83 at 191. Finally, from our examination of the record, we do not find that the court either sustained or overruled PCA's objection to the offer; nor do we find that the Ryans ever requested a ruling as to the offer. We find no error under this division.

### B.

The Ryans next assert the district court erred in excluding evidence of a claim filed against the law firm of Condon & Peavey by Robert Ryan's father and of its subse-

quent settlement. They argue this evidence is admissible under Iowa Rule of Evidence 408. The trial court excluded the evidence because it was irrelevant and evidence of settlement would be highly prejudicial.

The Ryans argue evidence of the claim and settlement is relevant to the issue regarding which party Condon & Peavey were representing during the August 1, 1984, transaction. Robert Ryan testified that he thought Condon & Peavey were representing his interests. Whereas, both Condon & Peavey testified they were representing Production Credit during the transaction.

■ Ryans concede that offers of compromise and settlement do not constitute an admission of liability. Iowa R.Evid. 408. *Miller v. Component Homes, Inc.*, 356 N.W.2d 213, 215–16 (Iowa 1984); Advisory Committee Notes, Fed.R.Evid. 408. Iowa Rule of Evidence 408 excludes evidence of compromise and offers to compromise if the evidence is to be used to prove liability. *Gail v. Clark*, 410 N.W.2d 662, 671 (Iowa 1987). But such evidence may be admissible when offered to prove a fact other than liability. *Id.* Ryans claim the evidence is relevant to "impeach Condon & Peavey to show bias and interest in the proceedings and should have been received for that purpose." The decision whether to admit such evidence for other purposes is discretionary. *Id.* The trial court's determination in this regard is reversible only upon a clear abuse of discretion. *Id.* at 672. We think the trial court reasonably balanced the questions of relevancy, probative value, and prejudice. We find no abuse of discretion in this instance.

## II. SUMMARY JUDGMENT IN REPLEVIN ACTION

Our review under this heading is on errors assigned. Iowa R.App.P. 4. Upon reviewing a motion for summary judgment, the moving party must have demonstrated the absence of any genuine issue of material fact and showed that he was entitled to judgment as a matter of law. *Hall v. Barrett*, 412 N.W.2d 648, 650 (Iowa App.

1987). It is agreed there are no factual disputes. The question before us is whether the court correctly applied the law.

In this replevin action, PCA seeks possession of certain collateral pledged to PCA as security by the Ryans in several security agreements. PCA here seeks judgment establishing its right to take possession of the pledged collateral so that it in turn can sell the same and apply the proceeds against the judgment entered against the Ryans.

The judgment just referred to results from the foreclosure action discussed previously in this opinion. In that foreclosure action, the Ryans consented to the entry of a decree which rendered personal judgment against them in favor of PCA in an amount equal to the debt owed. The decree, which was entered prior to commencement of this replevin action, also granted PCA the right to foreclosure its mortgage.

The Ryans claim that once judgment was entered in the foreclosure action, all claims based on the promissory note merged into the foreclosure judgment. Therefore, the Ryans contend, PCA is barred from bringing this replevin action for it is based on the same promissory notes upon which judgment was entered in the foreclosure action. They rely on *Brenton State Bank v. Tiffany*, 400 N.W.2d 576 (Iowa 1987).

In the *Brenton* case, the plaintiff bank obtained an in rem default judgment in a real estate foreclosure action for the full amount of the defendants' debt. *Id.* at 577. No personal judgment was granted against the defendants. *Id.* The plaintiff subsequently filed a replevin action and obtained a money judgment on the same underlying debt as existed in the foreclosure proceedings. *Id.* The money judgment was taken in lieu of possession of collateral. *Id.* The defendants' defense was that the indebtedness upon which the plaintiff's claims rested in the replevin action was fully merged in the judgment rendered in the foreclosure action. *Id.* Holding in favor of the defendants, the court stated:

[The] defendants' merger defense is, at the present time, meritorious. *Schnuettgen v. Mathewson*, 207 Iowa 294, 298,

222 N.W. 893, 895 (1929) (when mortgagee forecloses based on personal service on debtor, this exhausts the full measure of the remedy available—fact that mortgagee took decree for less than that to which it was entitled does not preserve right to recover by second action). The dictates of the *Schnuettgen* case are in no way minimized by the fact that the judgment of foreclosure was in rem against the mortgaged property. The action was an in personam action, and this was the final judgment in the case. Under such circumstances, a judgment given for less than the full relief requested will be interpreted as a denial of further relief. *See Watson v. Chapman,* 244 Iowa 56, 60, 55 N.W.2d 555, 557 (1952).

*Brenton,* 400 N.W.2d at 578.

The *Brenton* case is distinguishable from those facts presently before us. Production Credit is not seeking a new money judgment in this action. As stated, that was determined in the previous foreclosure action. What it seeks here is judgment to enforce those rights it has under the security agreement, i.e., possession of the collateral with the attending right to sell the same and apply the proceeds against the deficiency judgment resulting from the foreclosure proceedings.

Under Iowa Code section 654.6, if the real estate sells for less than the amount of PCA's judgment, PCA will have a deficiency judgment for the balance remaining. We believe that PCA is entitled to judgment in this action granting it the right to take possession of the collateral. It then has the right to sell the collateral and apply the proceeds against the deficiency judgment. The practical effect of PCA's action is nothing more than the marshaling of the assets the Ryans pledged as security for the underlying debt; and thereafter to exercise, in accordance with the procedure required by law, the remedy of selling the collateral and applying the proceeds to payment of the deficiency judgment. For the reasons stated, we do not believe this result to be inconsistent with the *Brenton State Bank* case.

For each of the reasons stated, we affirm the trial court. Although PCA cross-appealed, we are unable to find an argument in its brief concerning the cross-appeal. Therefore, we do not consider it.

AFFIRMED.

DONIELSON, P.J., concurs.

SACKETT, J., dissents.

SACKETT, Judge (dissenting).

I respectfully dissent. I would reverse and remand for a new trial.

I disagree with the majority's determination the trial court did not abuse its discretion in excluding testimony of a settlement made by Condon & Peavey.

Condon & Peavey is not a party to this litigation. John Peavey testified it only represented Production Credit Association. Robert Ryan and his father claimed they felt the firm was representing them. The Ryans sought to introduce (1) evidence of a claim made against Condon & Peavey by Robert's father and (2) evidence Condon & Peavey settled the claim with defendant's father.

The majority has determined the admission of the evidence was discretionary and the trial court did not abuse its discretion in admitting the testimony. The majority cites *Gail v. Clark,* 410 N.W.2d 662 (Iowa 1987), to support its conclusion.

I find *Gail v. Clark* inapplicable to the issue before us. *Gail* involves the offer of evidence of a settlement made by a party to the litigation. We are dealing here with a settlement made by a nonparty. The right to exclude evidence under Rule 408 is akin to a privilege rather than a rule of competency. *One has the privilege if he or she has made the offer in question and is a party to the suit in which the evidence is offered. See* McCormick § 274, p. 663 (emphasis supplied). When evidence of an offer of settlement made by a nonparty is made, the question of its admissibility to prove liability for or invalidity of the claim in question is not at issue.

Production Credit Association put the witnesses on the stand to verify the attor-

neys were only representing Production Credit Association in the transactions that resulted in Robert and Charlene Myers giving the mortgages. The fact of Condon & Peavey's payment to Robert's father serves to impeach that testimony. I find the evidence relevant and admissible and the exclusion to be error.

Having so held, I would find it unnecessary to address the issue in Division II of the majority opinion. But I do disagree with the majority on this issue. I find *Brenton v. Tiffany,* 400 N.W.2d 576 (Iowa 1987), instructive on this issue and determine Production Credit Association lost their right to foreclose their security interest when they failed to include it as a part of their suit on the underlying note.