# IN THE COURT OF APPEALS OF IOWA

No. 19-0381
Filed July 22, 2020

**PRENTICE W. MALOTT and LINDSEY B. MALOTT,**
    Plaintiffs-Appellants,

**vs.**

**BEVARD PROPERTIES, L.C., d/b/a BEVARD PROPERTIES, L.C.-SERIES 22 and THOMAS B. BEVARD,**
    Defendants-Appellees.
_____

Appeal from the Iowa District Court for Linn County, Mary E. Chicchelly, Judge.

Prentice and Lindsey Malott appeal the district court order granting summary judgment in favor of the defendants. **AFFIRMED.**

Peter C. Riley of Tom Riley Law Firm, P.L.C., Cedar Rapids, for appellants.

Joseph W. Younker, David M. Caves, and Laura M. Hyer of Bradley & Riley PC, Cedar Rapids, for appellees.

Heard by Tabor, P.J., and May and Greer, JJ.

**GREER, Judge.**

Prentice and Lindsey Malott appeal the district court order granting summary judgment in favor of Bevard Properties, L.C. and Thomas Bevard (collectively "Bevard"). The Malotts argue the doctrine of claim preclusion bars all of Bevard's claims and, even if not barred, Bevard could not foreclose without a deficiency judgment and pursue a judgment for an attorney fee award from a prior action on the contract. We cannot support the Malotts' theory on this record and affirm.

## I. Background Facts and Proceedings.

On September 1, 2009, Bevard and the Malotts entered into an installment contract for the Malotts to purchase a single-family home in Cedar Rapids, Iowa. The total purchase price was $139,900 plus interest at a rate of 8% per year. The contract required monthly payments of $1275 from October 1, 2009, until January 15, 2010, and then monthly payments of $1138.88. The contract stated in paragraph 1 that "[a]ny unpaid balance then outstanding as of October 1, 2012 shall become due and payable in full in one installment due on October 1, 2012." The contract permitted Bevard to accelerate the contract balance and foreclose in the event of default.

The Malotts did not make all payments according to the terms of the contract. In response to the missed payments, Bevard forfeited the contract three times but reinstated it upon payment from the Malotts. On each reinstatement the terms of payment remained the same. Yet Bevard never enforced the October 2012 balloon payment. The final reinstatement occurred on February 24, 2014, after the balloon payment's due date. The Malotts made, and Bevard accepted,

ten payments after the final reinstatement, but the Malotts still failed to make all payments according to the contract. The last payment of any amount was on May 27, 2015.

In October 2015, the Malotts sued Bevard based on what they alleged were persistent flooding issues in the home's basement. The parties refer to this lawsuit as "the law action." Bevard counterclaimed, pleading in part that the Malotts breached the installment contract by "failure to timely make the payments required and by failure to pay the full amount due." Bevard sought damages for the "Malotts' failure to timely make the payments required under the Agreement and for Malotts' failure to pay the full amount due."

After a trial, a jury awarded the Malotts $7500 on their fraudulent-practice claim and Bevard $20,000 on the breach-of-contract counterclaim. The judge entered judgment on the jury's verdict and gave the parties time to file post-trial motions and attorney fee applications. The Malotts filed a motion for judgment notwithstanding the verdict, arguing there was insufficient evidence of Bevard's damages. Bevard filed no post-trial motion. The judge denied the Malotts' motion and awarded the Malotts' counsel $12,000 and Bevard's counsel $30,000 in attorney fees. The attorney fees for Bevard's counsel were "taxed as court costs by the Clerk of Court against the Plaintiffs." Bevard did not appeal.

With the law action complete, the Malotts tried to satisfy the remaining balance of the contract by offering to pay the $20,000 judgment to purchase the property. Bevard did not accept this offer. The Malotts did not make any further installment payments on the contract after judgment was entered in the law action.

On October 30, 2017, Bevard gave the Malotts notice to cure default, which the Malotts failed to do. On November 14, the Malotts initiated the present case, which the parties call "the equity action," suing for specific performance and damages due to Bevard's refusal to accept the judgment amount from the law action to purchase the property. On December 12, Bevard sent the Malotts a notice of acceleration demanding the entire unpaid principal balance. The Malotts did not pay the accelerated balance within fourteen days. Due to the Malotts' failure to pay, Bevard counterclaimed in the equity action to foreclose on the contract, for declaratory relief, and for unjust enrichment. Bevard sought attorney fees and waived its right to a deficiency judgment following a sheriff's sale.

The Malotts filed a motion for partial summary judgment, arguing Bevard's claims were barred by the doctrine of claim preclusion, which the court denied. The court later granted Bevard's motion for summary judgment. The court entered a foreclosure decree on January 3, 2019. The foreclosure decree included the $20,000 breach-of-contract judgment from the law action and sums due under the contract post-judgment. But the foreclosure decree did not include the $30,000 attorney fee award. The Malotts filed a motion to enlarge, asking to the court to include the attorney fee award from the law action in the foreclosure decree as part of the pre-judgment sums due. The court denied the motion. The Malotts appeal.

## II. Standard of Review.

"We 'review a district court ruling on a motion for summary judgment for correction of errors at law.'" *MidWestOne Bank v. Heartland Co-op*, 941 N.W.2d 876, 882 (Iowa 2020) (citation omitted). "Summary judgment is proper when the moving party has shown 'there is no genuine issue as to any material fact and the

moving party is entitled to judgment as a matter of law.'" *Id.* (citation omitted). "Summary judgment is appropriate 'if the record reveals only a conflict concerning the legal consequences of undisputed facts.'" *Id.* (citation omitted). "We review evidence in the light most favorable to the nonmoving party." *Id.*

**III. Analysis.**

**A. Claim Preclusion.** The Malotts argue Bevard seeks a second bite of the apple. Malotts raise the issue under claim preclusion. And if Bevard sought the full balance due on the contract in the law action and a jury only awarded $20,000, the Malotts might have a valid point. *Penn v. Iowa State Bd. of Regents*, 577 N.W.2d 393, 398 (Iowa 1998) (explaining that claim preclusion bars all matters actually determined in the first action and all relevant matters that could have been determined). Bevard counters by pointing out that because the first action sought past-due payments only, it were not entitled to the full balance under the contract at that time, and the second action was to foreclose the contract.

"The doctrine of res judicata includes both claim preclusion and issue preclusion." *Pavone v. Kirke*, 807 N.W.2d 828, 835 (Iowa 2011). The Malotts alleged claim preclusion. "Res judicata in the sense of claim preclusion means that further litigation on the claim is barred." *Iowa Coal Mining Co. v. Monroe Cty.*, 555 N.W.2d 418, 441 (Iowa 1996). Our review of the record provided does not allow claim preclusion to apply to judgment terms under the equity foreclosure action. These are the reasons for our finding.

First, the general rule of claim preclusion is that a second action or claim is barred if there has already been a valid and final judgment on the merits. *Arnevik v. Univ. of Minn. Bd. of Regents*, 642 N.W.2d 315, 319 (Iowa 2002). The party

seeking to preclude the second action must establish three elements: (1) "the parties in the first and second action were the same"; (2) "the claim in the second suit could have been fully and fairly adjudicated in the prior case"; and (3) "there was a final judgment on the merits in the first action." *Id.*

> The rule applies not only as to every matter which was offered and received to sustain or defeat the claim or demand, but also as to any other admissible matter which could have been offered for that purpose. Claim preclusion, as opposed to issue preclusion, may foreclose litigation of matters that have never been litigated. It does not, however, apply unless the party against whom preclusion is asserted had a full and fair opportunity to litigate the claim or issue in the first action. A second claim is likely to be barred by claim preclusion where the acts complained of, and the recovery demanded are the same or where the same evidence will support both actions. A plaintiff is not entitled to a second day in court by alleging a new ground of recovery for the same wrong.

*Id.* (citations and internal quotations omitted). So we examine these elements under the facts of this case.

1. *Are the parties the same?* The parties in both matters are identical. So, we turn to the final two elements.

2. *Was there a full and fair opportunity to adjudicate the claim in the first action?* The Malotts' trial strategy is simple. If the doctrine of claim preclusion applies, the Malotts argue that Bevard's claimed judgment supporting foreclosure is limited to the $20,000 jury award. With that finding, the Malotts could pay the judgment and the foreclosure would be unnecessary. If only it were so simple, but alas not so. Claim preclusion is implicated when "the claim for relief litigated in the previous proceeding was the same as the claim of the present action." *West v. Wessels*, 534 N.W.2d 396, 398 (Iowa 1995). So we ask two questions: (1) did Bevard actually demand the full balance due under the contract in the law action?

And (2) even if it did not, was Bevard required to bring the action for the full balance due in the law action when it sought, as it claims, only past-due installments?

   i. *Did Bevard ask for the full balance under the contract but only received $20,000?* Unfortunately this question requires a divining rod with this record. Even the $20,000 jury award to Bevard raised questions.[1] The Malotts called it a compromise verdict based on the jurors' dislike of Bevard. Pointing to its trial exhibit H, Bevard argued the missed monthly payments reflected on the exhibit totaled over $31,000. Having no transcript of evidence from the first trial and only protestations about the basis of Bevard's claim for damage, we struggle to definitively conclude what Bevard demanded in the law action. The Malotts offered several points to bolster their position. First, the Malotts charge that in Bevard's written response to the law action, the company counterclaimed noting Bevard "suffered damages for the Malotts' failure to timely make the payments required under the Agreement and for the Malotts' *failure to pay the full amount due*." (Emphasis added). But this language could be read to refer only to the delinquent installments that had not been paid since 2015. Bevard asserts that was exactly what was intended by the language. And we see no language in the law action pleading that Bevard elected to declare future payments presently due and payable or that the balloon payment was past due.

   Next, in a second attempt to show a "same claim," the Malotts point to Bevard's opening and closing arguments in the law action and the use of Bevard's

---

[1] Interestingly, the missed monthly payments itemized in the three notices of forfeiture admitted as exhibits in the law action totaled $19,996.

exhibit H that calculated the entire contract balance. In the opening statements to the jury, Bevard explained:

> Another part of the contract that's important is part of the contract that's always important with a real estate transaction and that's the purchase price, $139,900, as well as information about what the down payment would be, when the down payment would be paid, what the monthly payments would be, when the monthly payments could be due, the interest rate, and that sort of thing. That's all in the contract.

The Malotts contend that because Bevard never suggested paragraph 1 of the contract had been modified by course of dealing or that Bevard's claim was only limited to amounts presently due, by implication, the balloon payment was due at the time of trial. We consider this claim to be argument, not proof. And Bevard never mentions the balloon payment or the full balance of the contract being due in the opening statement. Then to show the true intent of Bevard's claim, the Malotts draw attention to the closing arguments offered by Bevard. In that closing, Bevard pointed to exhibit H to explain the damages jury instruction and said:

> Element Number 4, the amount of any damage the Plaintiffs have caused.
> Let me pull up Exhibit H. Now, I take it from [Malott's counsel's] presentation this morning he doesn't like the document, Exhibit H. You will recall what the evidence suggested though. The testimony of Mr. Bevard was he looked at the contract. Paragraph 1 of the contract specified how payments would be calculated, the taxes, the insurance, that sort of thing. That was specified in paragraph 1 of the contract. He took paragraph 1 of the contract and used that to create this spreadsheet. This is based on paragraph 1 of the contract.

Again in the closing, Bevard mentions no specific dollar demand and the comments suggest that the jury can find the method of calculation of "payments" in exhibit H—which could refer to the unpaid installments. Without any specific request or argument for a specific dollar amount or the balloon payment balance,

we find the arguments to be unhelpful on the question of what Bevard requested by way of damages in the law action.

On a review of exhibit H, offered and admitted in the law action, it lists all payments made by the Malotts, shows when they were due, notes the interest accruing, and calculates a total contract balance of $164,016.30. That contract balance is not calculated using the October 2012 balloon payment deadline but instead references the ongoing balance of the contract as each monthly installment comes due. Exhibit H supports Bevard's claim that it was not calling the balloon payment due in the law case otherwise it would have calculated the full balance due with interest accruing as of October 2012. The exhibit does not even reference the balloon payment date. Other than pointing to the Malotts' own argument in closing,[2] it is unknown if the jury heard evidence about the balloon payment.[3] And as for Bevard's summary exhibit H, the Malotts offered no trial testimony to confirm a request by Bevard for the full contract balance. Likewise, there is no trial testimony establishing the foundation for and background of how exhibit H played into the damage evidence at trial. We do not find the Malotts' characterization of

---

[2] During closing argument, the Malotts' counsel stated,
> Bevard Properties has filed a counterclaim in this action. Are they seeking—Did they seek to forfeit the contract because it hadn't been paid and the balloon payment hadn't been made and get the property back? No. Have they sought to foreclose it—and you'll see in the contract there [are] provisions allowing forfeiture or foreclosure. Have they sought to foreclose the contract and get the property back? No. They filed a suit for the balance of the contract.

[3] Attorney arguments are not evidence. *See, e.g.,* Iowa State Bar Ass'n, Iowa Civil Jury Instruction 100.4 (2019) (noting that "[s]tatements, arguments, questions and comments by the lawyers" are not evidence).

Bevard's opening and closing to be conclusive about the requested recovery as Bevard made no specific dollar demands to the jury.

Finally, the Malotts assert Bevard's reliance upon a damage jury instruction that defined damages as "[a]mounts claimed to be due and unpaid pursuant to the real estate contract" proves it asked for the full contract balance. This also is not persuasive for the same reasons the pleading language was not helpful to the theme. We just do not know what was meant by "amounts claimed to be due" without reviewing the trial testimony. Then with a jury verdict substantially lower than the remaining balance on the contract, we observe that Bevard filed no post-trial pleading suggesting the jury awarded insufficient damages. Also, in resistance to the Malotts' post-trial motion, Bevard confirmed there was ample evidence supporting the jury award to it, including the Malotts' failure to make any payments since May 2015—with no reference made to the balloon payment obligation or the full balance of the contract.

After a review of the Malotts' claim preclusion arguments, we must also ask whether they met their burden of proof. *In re Estate of Richardson*, 93 N.W.2d 777, 784 (Iowa 1958) (party asserting the defense of res judicata bears the burden of proof). The teachings of *Richardson* establish "it must clearly appear from the record in the former cause, or by proof by competent evidence consistent therewith, that the matter as to which the rule of res judicata is invoked as a bar was, in fact, necessarily adjudicated in the former action." *Id.* In *Richardson,* the supreme court offered three points applicable to the present case. First, a review of the evidence produced at the first trial "might have been of some assistance to this court in connection with an analysis of the issues in [this] case." *Id.* at 783.

Second, the general verdict left the court unable to determine what issues the jury considered in making the decision. *Id.* And finally, where there is doubt between what issues the jury actually considered in the first case, it becomes unfair to deny a party "their day in court" in the second case. *Id.* Here, while we had the benefit of reviewing exhibit H, we cannot from a review of the exhibit or the pleadings alone confirm that Bevard was seeking anything other than the monthly past-due installments. *Bloom v. Steeve*, 165 N.W.2d 825, 827 (Iowa 1969) (noting the determination of what issues are involved in two cases requires a review of the pleadings and evidence). Put simply, here there is not enough flesh on the bones to establish a same claim in the first action as the second case.

But we next examine whether Bevard was required to have included a claim for the full balance in the law action even if the company did not ask for it.

ii. *Was the balance of the contract due in the law action so that Bevard was required to include it in their demand for damages?* Bevard posits that without accelerating the future installments due under the contract, it could only sue for amounts past due in the law action. Iowa law allows Bevard an election to collect the past-due installments under the re-recorded February 2014 real estate contract at the time of the filing of the law action without precluding the right to sue later for future past-due installments. *Andrew v. Stearns*, 244 N.W. 670, 671 (Iowa 1932) (noting that for a promissory note with no acceleration clause, the only amount due was the first installment payment and claim preclusion did not bar second action to collect later due installment as it would have been a premature claim in the first action). To counter this assertion, the Malotts contend the 2012 balloon payment was indeed due and owing as the deadline passed and was lost when Bevard

failed to include it in the law action. The real estate contract omitted any provision that automatically accelerated the contract balance upon default.

It is true that the contract required payment of the balance of the obligation by October 2012. Yet, after that balloon deadline, Bevard made no demand for that full payment but continued accepting whatever monthly payment the Malotts forwarded. Confirming the evolution of this course of dealing, after serving a notice of forfeiture requesting—not the balloon payment—but past-due monthly payments, the Malotts made some larger payments, and Bevard re-instated the contract in February 2014.[4] Bevard accepted ten payments of various sums after the February 2014 reinstatement of the contract. When a lender regularly accepts late payments, as Bevard did here, it constructively waives the right to accelerate the debt unless and until it serves the borrower a notice of its intention to strictly enforce the terms of the mortgage. *Dunn v. Gen. Equities of Iowa, Ltd.*, 319 N.W.2d 515, 517 (Iowa 1982); *Westercamp v. Smith*, 31 N.W.2d 347, 353 (Iowa 1948) (applying waiver based on acceptance of payments not in conformity with the contract to real estate contract forfeiture). Ironically, this notice requirement is meant to protect the buyers, who would have come to expect the lender to continue accepting their late payments based on their course of dealing up until that point. Likewise, the real estate contract contained no separate right to acceleration that would operate without notice. And in any event, the course of accepting late payments constituted waiver of any right to accelerate without notice to the Malotts

---

[4] This was not the first re-recording of the original 2009 real estate contract. Bevard re-recorded this original contract in April 2011 and again in September 2012 after requests for past-due monthly payments.

that future late payments would not be accepted. *Dunn*, 319 N.W.2d at 517; *see also* 17 David M. Erickson & Christopher Talcott, *Iowa Practice Series*, *Real Estate Law and Practice* § 3:5 (Nov. 2019 update). All parties concede that no notice of acceleration was served before the law action. So in that first action, the entire balance of the contract was not yet due.

Prior to the second equity action, when the Malotts failed to make payments after the jury verdict on either the past-due installments or installments due after the award, Bevard served notice to accelerate payment of the entire contract balance—a requirement under the foreclosure section of the contract. Then, and only then, did Bevard proceed to seek foreclosure of the contract without redemption under Iowa Code sections 654.20 through 654.26. We have recognized: "[t]he right to join related causes of action does not bar subsequent litigation of a distinct cause of action that was not joined. The situation is the same as with a permissive counterclaim." *Westway Trading Corp. v. River Terminal Corp.*, 314 N.W.2d 398, 401 (Iowa 1982) (citation omitted), *accord Leuchtenmacher v. Farm Bureau Mut. Ins. Co.*, 460 N.W.2d 858, 860 (Iowa 1990); *Israel v. Farmers Mut. Ins. Ass'n of Iowa*, 339 N.W.2d 143, 146 (Iowa 1983). While Bevard is only entitled to one satisfaction of the debt, it can pursue any remedies available to it under the contract and under the law. *Brenton State Bank of Jefferson v. Tiffany*, 440 N.W.2d 583, 587 (Iowa 1989). In the end, the claim preclusion doctrine bars only those matters litigated and decided in the first action. The district court found the facts that were undisputed—the lack of an acceleration of the balance due—foreclosed use of claim preclusion to limit the balance due under the real estate contract. So similar to *Andrew*, where only the monthly

installments were past due, it was not fatal to bring a second action involving acceleration of the future monthly installments. *See* 244 N.W. at 671.

To sum up and return to the core questions, in order to look to see whether the claim in the second suit could have been fully and fairly adjudicated in the prior case—that is, whether both suits involve the same cause of action—the court must examine "(1) the protected right, (2) the alleged wrong, and (3) the relevant evidence." *Iowa Coal*, 555 N.W.2d at 441. We are unpersuaded that Bevard demanded the full balance due in the law action or even that it could have done so. It was the Malotts' burden to prove their defense of claim preclusion, and we agree with the district court that summary judgment on this issue was proper. *See Bloom*, 165 N.W.2d at 827.

3. *Was there a final judgment on the merits in the first action?* It is undisputed that there was a final judgment in the law action because the jury returned a verdict. But it does not matter to our analysis. The Malotts' failure to meet the requirements of the "full and fair" prior adjudication element slams the door on any access to the doctrine of claim preclusion. *Arnevik*, 642 N.W.2d at 319 ("The absence of any one of these elements is fatal to a defense of claim preclusion.").

In the end, it was the Malotts' burden to show claim preclusion as to the second suit. *See Bloom*, 165 N.W.2d at 827. Bevard did not have a "full and fair opportunity" to litigate the foreclosure claim in the law action. The Malotts failed to establish the applicability of claim preclusion as a defense to the second action. We affirm the summary judgment decision of the district court.

**B. Law Action Attorney Fees.** Because Bevard waived any deficiency judgment associated with the foreclosure action, the Malotts argue the attorney fee award from the law action should have been included as part of the pre-judgment sums due in the foreclosure decree in the equity action. Bevard claims the attorney fee award from the law action is separate and distinct from the judgment on the breach-of-contract claim that was included in the foreclosure decree. We agree.

In the law action, Bevard was only seeking to recover past-due installment payments, not foreclose on the property. *Cf. Fed. Land Bank of Omaha v. Faught Bros, Inc.*, 468 N.W.2d 793, 795 (Iowa 1991) ("We have held that a mortgagee may maintain a personal action on his note against the debtor, and may, after judgment therein, foreclose his mortgage." (quoting *Schnuettgen v. Mathewson*, 222 N.W. 893, 896 (Iowa 1929)). The attorney fee requested in the law action was for the attorney's work in pursuing the breach-of-contract claim for these past-due payments. Per the terms of the contract, the Malotts agreed to pay Bevard's attorney fees "[i]n case of any action, or in any proceedings in any Court to collect any sums payable or secured [in the contract]." *See EFCO Corp. v. Norman Highway Constructors, Inc.*, 606 N.W.2d 297, 301 (Iowa 2000) (stating that a written contract must contain an express provision to allow a court to award attorney fees and litigation expenses). We agree with the district court that the attorney fee award in the law action is separate and distinct from the foreclosure action. For that reason, the Malotts were not entitled to have that attorney fee award included in the foreclosure decree as part of the waived deficiency judgment.

**IV. Disposition.**

For the above-stated reasons, we affirm the district court order granting summary judgment in favor of Bevard.

**AFFIRMED.**